■ Morris S. Novik, Appellant, v. Bartell Broadcasters of New York, Inc., et al., Respondents.— Judgment, Supreme Court, New York County, entered July 29, 1971, affirmed. Defendants-respondents shall recover of appellant $50 costs and disbursements of this appeal. We agree with the comprehensive and well considered decision of Mr. Justice Kapelman at Trial Term (66 Misc 2d 857) and confirm the findings and conclusions made therein but would simply like to add the following in view of some statements made in the dissent. The option agreement had its origins in a business transaction which was of apparent benefit to the plaintiff, who received a proportionate share of the sale price of the station which was in an amount in excess of over $1,500,000. Whatever the plaintiff's motives were in selling and however reluctant he may have been to part with his interest in the station, he did in fact sell his stock in what was a pure business transaction. We make these comments since the dissent would give consideration to " the long association of the principals, and professed friendship." Regardless of the relationship which may have existed between the parties, their rights are governed by the agreement they excuted and that agreement, we note, was prepared solely by plaintiff's own attorney. Trial Term found the plaintiff's attempted exercise of the option by letter dated August 11, 1964 was ineffective for three reasons, which are as follows: FIRST — It was held that the failure by plaintiff to pay $98,000 on the date of the exercise of the option was fatally defective. It is argued that tender of such monies was not required to properly exercise the option and that in any event, such payment was prevented by defendants' own actions. The option agreement set forth in clear terms that the plaintiff was required to pay the $98,000 (i.e., 28% of $350,000) upon the date of the exercise of the option. And if the language of the agreement is unclear in any manner, then as noted earlier, the agreement was drawn by plaintiff's attorney and any ambiguities must be resolved against the plaintiff. We note that in the letter of August 11, 1964 it was stated that the $98,000 was being tendered by certified check. But, of course, no such tender was ever made. Instead, in what amounted to a meaningless gesture, plaintiff sent photocopies of certified checks. Nor can it be said that any action by defendants prevented tender. It is apparent that plaintiff was given all the necessary information he needed to determine the price of the option and that he well knew just what amount was required to be tendered and what elements were to be taken into account in determining the total purchase price. The record does not substantiate any finding that the figures he was provided with were inaccurate or erroneous. Further, as recognized in the dissent, if there were any adjustments, such could have been handled at the closing and would not, in any event, affect the initial payment required by plaintiff upon the exercise of the option. SECOND — The trial court found that plaintiff improperly conditioned his attempted exercise of the option on the unconditional delivery of the stock to him. Such was not provided for in the agreement, and was directly contrary to the provision which provided that the stock was to be deposited to secure the unpaid balance of the purchase price. THIRD — It was found that the exercise of the option was improperly conditioned upon

the assumption "that the financial condition of the Bartell Broadcasters of New York, Inc. shall be as of the date of the issuance of such shares of stock as intended by the parties and contemplated by the Agreement." The testimony established quite clearly that by the above language the plaintiff conditioned his acceptance of the offer upon the requirement that the assets of the corporation equal the liabilities. Once again, this condition is not to be found in the option agreement drawn by plaintiff's own attorney. Accordingly, as stated previously, we agree with the findings and conclusions reached by the trial court to the effect that plaintiff never validly exercised the option. He failed to comply with the provisions of the agreement and he attempted to impose invalid conditions upon his purported exercise of the option, which conditions varied the option in a material and meaningful manner. We do not find that any actions by the defendants prevented plaintiff from exercising the option and moreover, the plaintiff did not have any right to vary the option agreement. From this record we can only conclude on the facts that any failure of the plaintiff to properly exercise the option was of his own doing for whatever motive, business or otherwise, he may have had. Concur — Murphy, McNally and Tilzer, JJ.; McGivern, J. P., and Kupferman, J., dissent in the following memorandum by McGivern, J. P.: In order to keep a door open on the enterprise, with a view to returning if he was so advised, Novick obtained his option agreement of August 19, 1959, permitting him to reacquire 20% of the stock of the WOV Broadcasting Corp., within five years. And he was to exercise this option by a written notice, payment of 28% of the purchase price on the exercise of the option, the balance by stated installments. This agreement, by paragraph Four, envisaged the necessity of adjustments, and the necessity came to pass, by the acquisition of Sunday broadcasting rights, and the dissolution of WOV, followed by the succession of Bartell Broadcasters of New York, Inc. In my judgment, the option was effectually exercised, and the actual, physical handing over of the down payment of the purchase price, as it might be ultimately determined, was not a prerequisite. The initial down payment had been called for only in percentage terms, and so the computation of price adjustments was an indispensable preliminary to a down payment. Until the new basic purchase price was established, upon facts required to be supplied, but not supplied by defendant, plaintiff was in no position to determine the exact amount of dollars required to be initially paid on the exercise of his option. Actually, the transfer of the purchase price was thwarted by the refusal of the optioner to co-operate and by not coming forward with timely information. And no final deal could be consummated until this information was adequately supplied. This is so, even when viewed apart from the long association of the principals, and professed friendship. A down payment, under such circumstances, was not indispensable, if good faith were present. The whole situation is instinct with the defendants' abiding knowledge of the plaintiff's intent to exercise the option and also with the defendants' long-formed resolve to bolt the door and not permit plaintiff to share in the fruits of a successful and burgeoning enterprise. For as far back as December 13, 1963, the plaintiff, through his attorney, had informed Bartell of his intention to invoke the option, an intention which was repetitively reasserted and reinforced by the preparation of a draft agreement to purchase. A painstaking closing was rendered even more necessary by the uncooperative failure of the defendant to furnish essential information, such as annual financial statements, a failure found to be a fact by the Trial Judge. And on August 11, 1964, when the plaintiff formally exercised his option, as an earnest of good will and of his ability to go forward, he sent along photo-

stats of two official checks of the Manufacturers Hanover Trust Company. Under the circumstances here prevailing, the plaintiff, as a matter of law, could and was required to do no more. But this was curtly rejected by the defendants, ostensibly for hypertechnical reasons, of no merit, but really out of a determination to bar the plaintiff from re-entry into the venture. As a further earnest of good will, I also note the plaintiff offered to place the price in escrow. The effectiveness of the exercise of the option was not impaired by the fact plaintiff did not physically hand over the $98,000 or certified checks in that amount. The contract did not, as the majority implies, call for the down payment of such precise sum upon the exercise of this option. What it did call for was a down payment of 28% of the purchase price, as it might be determined, the exact amount of which was dependent upon yet unknown factors. Thus, there is not ambiguity in the contract chargeable to plaintiff as author, which defendant may use as an escape hatch, as the majority asserts. Rather is there an apparent deliberate omission of detail concerning the mechanics of performance as they might unfold in the anticipated changing situations, which would necessarily alter the mode of performance of the agreement by the parties. And we must be mindful we have a contract between sophisticated parties, both experienced and knowledgeable in this field, the defendant being represented by able counsel. No doubt the close and friendly relationship of the parties caused each not to waste time spelling out each and every conceivable action and the timing thereof. Thus, I find it difficult to find any support in the record for the conclusion of the majority that plaintiff "knew just what amount was required to be tendered and what elements were to be taken into account in determining the total purchase price". All of the elements, some unrevealed, were in the complete knowledge of defendant, not plaintiff. Furthermore, what we are concerned with is not the "elements", but the ability to translate these elements into a dollar equation. It is not contended that the figures furnished plaintiff were inaccurate or erroneous. It is contended, correctly by plaintiff, that they were incomplete and inadequate. So much so that he had to indicate the exercise of his option in the manner he did. Nor do I find unreasonable plaintiff's expectation that the optioned shares would be transferred as a *quid pro quo*, depending on what the true finances of the corporation were revealed to be. Also implied was the concurring performance of obligations by defendants. An actual cash down payment had not been made a *sine qua non* to the exercise of the option. In my view, the findings of the trial court, adopted by the majority, find no real support in the record; they are out of joint with the realities of the discussions, bearing upon and incident to the intended exercise of plaintiff's option; and, in my view, erroneous as a matter of law. Further, I find no justification for the conclusion that plaintiff demanded an improper delivery of the stock which was the subject of the option. In sum, I do not find the stance of the plaintiff unreasonable, or that it represented the addition of any new and essential terms, it being generally accepted that the mechanical details incident to a stock purchase of such large scope would have to be handled subsequently at a detailed closing, necessarily requiring concurring actions of both parties for a mutuality of protection. The crux was the invocation of the option, not the inevitable minutiae of a subsequent closing, which in turn would be dependent on the financial revelations, which the plaintiff had importunately sought months before D-Day   And in voting to reverse and to grant judgment to the plaintiff, I would accept the record proof of damages as uncontradicted and not unreasonable.