■ PANNER WOODWORKING COMPANY, INC., Appellant-Respondent, v LINCOLN ADAIR et al., Respondents-Appellants.—Order of Supreme Court, New York County, entered March 28, 1979, insofar as it denied defendant's motion for summary judgment dismissing complaint, unanimously modified, on the law, summary judgment awarded to defendant and complaint dismissed, with costs. Appeal from order entered June 12, 1979, denying defendant's motion for reargument, dismissed, without costs, as an order denying reargument is not appealable. Panner Woodworking Company, Inc. (Panner), commenced this action against Lincoln Adair and Sally Adair, and 40 West 24th Street Corporation (defendants) for specific performance of a purported agreement to sell to the plaintiff stock in a residential apartment corporation. Defendants Lincoln and. Sally Adair purchased a commercial building located at 40 West 24th Street, New York, in December, 1977, intending to convert it into a 23-unit residential co-operative. They began renovation work and filed conversion plans with the Attorney-General. Panner, a New York corporation engaged in the woodworking and cabinet business, occupied the entire second floor of 40 West 24th Street pursuant to a five-year commercial lease signed in 1975. On or about April 27, 1978, Lincoln Adair and Panner signed a "Memorandum Agreement," which granted Panner, under certain conditions, an option to purchase as a co-operative unit the space it had been occupying as a tenant. The agreement, *inter alia,* provides as follows: "(1) parties agree to enter into 5 year lease, commencing May 1, 1978, at an increased rental (2) tenant to permit entry to plumbers into second floor to install new plumbing lines * * * (3) tenant to modify duct running to roof to remove noxious odors (4) in the event a plan for the conversion of the premises to cooperative ownership shall have been approved by the Attorney General of the State of New York, the aforesaid lease shall become null and void 90 days after the plan becomes effective. If the plan becomes effective before October 1, 1978, then the lease shall become null and void on January 1, 1979. The tenant shall have the option to purchase the stock allocable to the space from the landlord or cooperative corporation or whoever is the holder of said stock for the second floor premises for a price of $50,000 (Fifty thousand dollars) with a $10,000 (Ten thousand dollars) down payment to landlord on or before January 1, 1979 or within 90 days of approval of the plan. * * * In the event that either party fails to comply with any of the above conditions this agreement may be considered null and void and no part shall be considered binding." Following the execution of the agreement on April 27, 1978, the parties failed to agree on the terms of the new five-year lease, nor did Panner take any steps to correct the nuisance created by the duct. On August 1, 1978 the

Attorney-General accepted defendant's offering statement for filing. The plan accepted included a provision that "the second floor purchaser will be required to make installations necessary for combined business and residential use". By letter dated November 2, 1978, Panner purported to exercise its option under the agreement to purchase the stock allocable to the second floor but did not tender a $10,000 down payment. Instead it requested that a closing date be scheduled in the future and that it would tender the down payment at the time of the closing. In December, 1978, Panner began this action for specific performance of the April 27, 1978 agreement, which contained the option to purchase stock representing the second floor for $50,000, and filed a *lis pendens*. Defendants moved for summary judgment dismissing the complaint because of Panner's failure to comply with the terms of the agreement of April 27, 1978 under which plaintiff claimed its rights. Specific performance must be denied where the party seeking such relief is in default under the contract or where conditions set forth in the contract have not been performed. (55 NY Jur, Specific Performance, § 26.) The option sued for is contained under paragraph four of the agreement of April 27, 1978, which, as herein relevant, provides that if the Attorney-General approved a co-operative plan, the tenant (Panner) must exercise its option to purchase the shares by January 1, 1979, or 90 days after approval, by a down payment of $10,000. Panner's letter of November 2, 1978 to defendants whereby it elected to exercise its option to purchase the stock is insufficient, since it did not forward the necessary $10,000 down payment and hence is not in compliance with the agreement. To date, Panner has never tendered the $10,000 down payment and has promised to do so only when it receives the stock. Accordingly, failure to remit the $10,000 down payment at the time it purported to exercise the option and its promise to pay same at closing, bar the relief sought by plaintiff herein. *(Novik v Bartell Broadcasters of N. Y.,* 39 AD2d 885, affd 32 NY2d 659). We have reviewed the remaining arguments of the plaintiff and find them to be without merit. Concur—Murphy, P. J., Ross, Lupiano, Silverman and Carro, JJ.