(121 App. Div. 443.)

LOCKER et al. v. AMERICAN TOBACCO CO. et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. TRIAL—DISMISSAL—OPENING STATEMENT—HEARING AND DETERMINATION OF MOTION.

Where the sufficiency of the facts stated in a complaint and opening to constitute a cause of action is the basis of a motion to dismiss, every allegation of fact contained in the pleading must be taken as admitted, and plaintiffs are entitled to the benefit of every fair presumption which may be implied therefrom.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 373.]

2. MONOPOLIES—COMBINATIONS IN RESTRAINT OF TRADE—JURISDICTION AND LAWS GOVERNING.

In an action in a state court to restrain an alleged unlawful combination in restraint of trade in a certain city, the statutes of the United States need not be considered, since they relate to interstate trade or commerce, and redress for violation of their provisions must be sought in the federal courts, which alone have jurisdiction.

3. SAME—PRESUMPTIONS AS TO UNLAWFUL CHARACTER.

In an action to restrain an alleged unlawful combination in restraint of the tobacco trade in a certain city between a selling corporation and a producing corporation, which it is claimed was associated with other similar companies, comprising the "tobacco trust," where there is no allegation that defendant companies were incorporated for an unlawful purpose, that the acquisition of or uniting with other corporations by either defendant was unlawful, or in pursuance of an unlawful agreement, or that it was in pursuance of such an agreement that the producing corporation made the other its sales agent in the city, or that any act resulted in discriminating against or injuriously affected any dealer in the city other than plaintiffs, or that the relations of defendant corporations with other corporations and persons were illegal under the laws of the state in which they were incorporated, or that the producing corporation had entered into or become a party to an unlawful combination or merger, it must be assumed that the relations of the various corporations are innocent, and lawful.

4. SAME.

In an action against a producing corporation and a selling corporation to restrain an alleged unlawful combination in restraint of the tobacco

trade in a certain city, it appeared that the alleged agreement gave the selling corporation the sole right to market the products of the producing corporation in the city, but it did not undertake to regulate and did not in its terms relate to competition between the producing corporation and other corporations alleged to be under its control, nor did it purport to establish sale prices, output, or terms of sale, nor did it give the selling corporation any power which the corporations themselves united or severally might not lawfully have exercised. *Held*, that the alleged agreement was not illegal, as creating a monopoly or being in restraint of trade.

**5. SAME.**

A producing corporation may lawfully authorize a selling corporation to sell or refuse to sell its products to any persons, and to establish the price and terms of sale thereof, since it may delegate to another the rights which it might lawfully exercise itself.

**6. CONSTITUTIONAL LAW—PERSONAL RIGHTS—LIBERTY TO CONTRACT.**

Under the liberty of action guaranteed by the state and federal Constitutions, any one may legally refuse to maintain trade relations with another for any reason or without any reason.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 157.]

**7. MONOPOLIES—COMBINATIONS IN RESTRAINT OF TRADE—REMEDIES OF THIRD PERSON.**

If a third person could attack an agreement giving a certain corporation the exclusive right to sell the products of another, the courts could only declare the invalidity of the agreement, and could not compel the sale of the products to the third person.

**8. SAME—ADEQUACY OF REMEDY AT LAW.**

In an action to restrain an alleged unlawful combination in restraint of the tobacco trade, in a certain city where plaintiff alleged an injury resulting from the refusal of a defendant corporation to sell its products to plaintiff in accordance with a previous agreement, plaintiff had an adequate remedy at law for a breach of the contract, which would exclude equitable relief.

Appeal from Special Term, Kings County.

Action by John A. Locker and Elma Locker against the American Tobacco Company and others. From an order sustaining a motion to dismiss the complaint on the ground that it did not state a cause of action, plaintiffs appeal. Affirmed.

The complaint alleges: Subdivision 1: The copartnership of the plaintiffs. Subdivision 2: That the defendants the American Tobacco Company and the Metropolitan Tobacco Company are corporations, organized under the laws of the state of New Jersey and doing business in the state of New York and elsewhere throughout the United States, in the manufacture and sale of tobacco and cigarettes, and together own, control, or market upwards of 90 per cent. of the entire amount of such merchandise manufactured or marketed in the state of New York, and that they are associated with other corporations, which together with themselves constitute what is known to the trade as the "Tobacco Trust." Subdivision 3: That the defendants Bendheim and Stern are and were at all times mentioned stockholders in said two corporations, and were actively connected with the formation of said Metropolitan Tobacco Company in 1899, and since its incorporation have been directors and officers; Bendheim being its president and Stern its manager and representative in charge of its office and branch store at No. 197 Graham avenue, Brooklyn. Subdivision 4: That said Bendheim and Stern, both individually and as such officers, have taken an active part in the dealings between said corporations and the plaintiffs and their predecessors. Subdivision 5: That certain named persons were authorized agents and employés of one or both of said corporations, and as such have solicited and taken orders from plaintiffs and their predecessors, which were filled by the defendants. Subdivision 6: That plaintiffs are the

assignees of, successors of, and the owners of the wholesale and retail tobacco business which for more than 40 years has been successfully conducted and carried on in Brooklyn by their predecessors and themselves, which business is one of the largest and most reliable jobbing and wholesale and retail tobacco establishments in said city, and very profitable to the plaintiffs.    Subdivision 7:    That the defendant the American Tobacco Company was incorporated about the year 1890, with a capital of $25,000,000, for the purpose of curing tobacco leaf, dealing in tobacco in all of its forms, establishing and securing factories, agencies, and depots for the manufacture and sale thereof, and for carrying on such business throughout the United States and foreign countries.    Subdivision 8:    That the capital of said company has been increased to $55,000,000, and it has from time to time bought, secured, and obtained the control of many of the largest tobacco and cigarette manufacturing plants and companies in the country, with most of which plaintiffs and their predecessors had business relations; that it assisted in organizing, and through its officers and agents controls and is associated with and interested in, other large corporations in the manufacture and sale of tobacco and cigarettes; that at the time of the acts complained of it and its associates and allied corporations—known as the "Tobacco Trust"—had several hundreds of millions interest in said business, and practically controlled so large a share of the tobacco marketed in the country and state that no general jobber or dealer could successfully do business or supply the demands of his customers in Greater New York without handling the products controlled by said trust to some extent, and especially that controlled by the defendant corporations.    Subdivision 9:    That from the time of the organization of the American Tobacco Company, until the time of the organization of the Metropolitan Company, plaintiffs' predecessors were solicited and invited by the American Tobacco Company to purchase of it directly its products, and so far as possible increase their sale.    Said company sent agents to solicit trade, and offered premiums for special efforts in the sale of its merchandise, and, as an inducement to plaintiffs and their predecessors to continue and increase their trade, it promised and agreed with them that their orders should be at all times thereafter promptly filled upon their most favorable terms.    That, relying upon such promise and agreements, the facilities of plaintiffs' business were largely devoted to the sale of the products of said corporation, and it became identified with and known as one of the largest depots for the sale of such merchandise in Brooklyn.    Subdivision 10:    That the Metropolitan Tobacco Company, with the knowledge and consent of its codefendant the American Tobacco Company, was organized in 1899, and the latter thereupon notified its former direct customers, including plaintiffs' predecessors, that the Metropolitan Tobacco Company had become its sole distributing agent for the sale or distribution in Greater New York of its products, and requested that thereafter all orders be given to, and purchases made from, such latter named company; that since said notice said American Tobacco Company has refused, pursuant to its agreement with said Metropolitan Company, to fill any orders directly for any jobbers in Greater New York, and has referred such dealers to the latter company, although thereafter its agents continued to solicit plaintiffs to purchase, through said Metropolitan Company, the merchandise owned or controlled by the American Company.    Subdivision 11:    That the Metropolitan Tobacco Company is not a manufacturer or producer of tobacco or its products, but after its organization it was given by said American Company and the other companies constituting the "Tobacco Trust," or some of them, and it yet has and enjoys, the sole right and exclusive privilege in Greater New York of marketing all of the merchandise owned, controlled, or sold in that city by said American Company or trust, and that no dealer in said city can, without the consent of said Metropolitan Company, purchase direct from said American Company, or any of its allied corporations, any of their products.    Subdivision 12:    That since its organization the Metropolitan Tobacco Company, with the knowledge and consent of its codefendant corporation, has from time to time advised dealers of the different brands of tobacco, cigarettes, and other products manufactured, controlled, or being marketed by the American Tobacco Company, and the prices fixed therefor, and directed that all orders in Greater New York therefor should be sent to and must be subject to acceptance by it.

Subdivision 13: That said Metropolitan Tobacco Company, with the knowledge and consent of the other defendants, has and yet continues to unlawfully and unjustly discriminate between the plaintiffs and other jobbers and dealers in tobacco in Greater New York, and has and does refuse without lawful cause to sell any of the aforesaid merchandise to plaintiffs on any terms, while at the same time selling such merchandise to other dealers in the same city upon the regular advertised terms therefor. Subdivision 14: That the relations and dealings of plaintiffs and their predecessors with the defendant corporations, since their respective organizations, have been satisfactory and beneficial to the defendants, who have constantly solicited orders and urged an extension of dealing in their products at both wholesale and retail, which plaintiffs have done until their customers to a large extent demand the products of the defendant corporations, to the exclusion of all others. Subdivision 15: That the American Tobacco Company, with the knowledge and consent of the Metropolitan Company, has attempted to increase the efforts of plaintiffs and their predecessors by offering and giving their salesmen valuable prizes for increased sales of their products. Subdivision 16: That plaintiffs and their predecessors have at all times conformed to all reasonable suggestions made by said corporations, paid their bills promptly, and no complaint has been made of their manner of handling defendant's products; that up to the time of the grievance complained of neither corporation ever informed or intimated to plaintiffs that it would ever limit the amount of its products which plaintiffs might handle at either wholesale or retail. Subdivision 17: That on several occasions in the years 1903 and 1904 plaintiffs were requested by one or more of the defendants, or by their direction and consent, to sell their entire business to one of the defendant corporations, and bind themselves to never again engage in said business in the same vicinity, and upon plaintiffs' refusal so to do they were informed by said defendants, or one of their agents, that if they (plaintiffs) did not accept said offer the defendants, or some of them, had resolved to and would destroy plaintiffs' said business, would refuse to sell their products to them, and would freeze and drive the plaintiffs out of the tobacco business altogether. Subdivision 18: That on several occasions since 1899 defendant Bendheim, as president of the Metropolitan Tobacco Company, has solicited one or both of the plaintiffs to sell their entire business to said corporation, and personally negotiated for such a sale, which negotiations failed. Subdivision 19: The same allegations as to the defendant Stern, with the addition that he warned plaintiffs that, if they failed or refused to make such sale, the Metropolitan Tobacco Company had, at the instance of the American Tobacco Company, decided to and surely would refuse to sell to plaintiffs merchandise of any kind, and would drive the plaintiffs out of business. Subdivision 20: That after plaintiffs had notified Stern that they would not sell unless they received a fair price for their business, and in May or June, 1904, the Metropolitan Tobacco Company, Stern, and Bendheim notified plaintiffs that said corporation would not thereafter fill any of their orders on any terms. Subdivision 21: That at various times since plaintiffs have given orders for staple merchandise made or marketed by the American Tobacco Company to the defendant the Metropolitan Tobacco Company, and tendered cash payments on delivery, but said corporation refused to sell or deliver any goods whatever to plaintiffs. Subdivision 22 alleges a conspiracy between the defendants to destroy plaintiffs' business and create a monopoly for their own benefit and profit, but it states no facts, and upon the argument of the motion to dismiss plaintiffs' attorney admitted that its averments were solely a deduction from the preceding allegations of the complaint. Subdivision 23 alleges that thereafter the Metropolitan Tobacco Company, with the knowledge and consent of the American Tobacco Company, without just cause, and in violation and disregard of the promise and course of business under which plaintiffs had for years dealt with it, and in direct violation of the laws of this state and of the United States, refused and continued to refuse to sell to plaintiffs, or to permit or suffer any of its customers to sell to them, any of its products or merchandise marketed by them, at any price or on any terms, to plaintiffs' great loss and damage. Subdivision 26: That the defendants' products are staple commodities of prime necessity and in ordinary use and constant demand throughout

the country; that defendants and their associates, under their control, not only own or control upwards of 90 per cent. of the entire output of tobacco and its products in the United States, but also have a large control over the various articles used in the manufacture of tobacco, snuff, cigars, cigarettes, pipes, smokers' supplies, and sundries; that the purpose of defendants, by the acts alleged, is to enable themselves to complete a gigantic and unlawful monopoly, to destroy the legitimate business of the plaintiffs and of others similarly situated, and that the result will be to unlawfully increase the price and decrease the quality to consumers, and increase unjustly the profits to themselves of the entire tobacco output of this country, controlled by them, which acts and purposes are in restraint of trade and in violation of law. Subdivision 27 reiterates that the acts alleged violate public policy and the laws and statutes of the United States and of the state of New York. Subdivision 28 alleges that plaintiffs have sustained damages by defendants' acts to the amount of $100,000. Subdivision 29: That there are other corporations or individuals who have taken part in the acts alleged, whose exact names, the parts they have taken, or the exact legal relations they bear to such acts or to the defendants, are unknown to the plaintiffs, and that some of them are beyond the jurisdiction of the court, for which reasons they are not made party defendants.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

Frederick P. Bellamy, for appellants.

De Lancey Nicoll (Junius Parker and John D. Lindsay, on the brief), for respondent American Tobacco Company.

William N. Cohen (Samuel W. Weiss, on the brief), for respondents Metropolitan Tobacco Company, Adolph D. Bendheim, and Arthur Stern.

RICH, J. This action is brought, as we have seen by the above complaint, to restrain what is alleged to be an unlawful combination between the defendants, in restraint of trade in tobacco, in Greater New York; and the only question before us is whether the facts alleged in the complaint, as varied by the opening, establish a cause of action. Every allegation of fact contained in the pleading must be taken as admitted, in addition to which plaintiffs are entitled to the benefit of every fair and reasonable presumption which may be justifiably implied therefrom. We may eliminate from consideration the statutes of the United States, referred to in the complaint, because they have no bearing upon the cause of action here presented. They relate only to matters in restraint of trade or commerce between or among the several states of the Union or with foreign nations, and for a violation of their provisions redress must be sought in the federal courts, which alone have jurisdiction. The common law, and the particular statute claimed to have been violated by the defendants, viz., chapter 690, p. 1514, of the Laws of 1899, commonly known as the "Donnelly Act," control the determination of the question whether the acts alleged support the contention that they are illegal and in restraint of trade.

It will be observed that in this pleading there are no allegations that the incorporation of the defendant corporations was unlawful or for an illegal purpose; that their acquisition of or unity with other corporations was unlawful or in pursuance of any agreement to advance or control prices, discriminate between dealers, or in any manner re- .

strain or wrongfully control trade; or that it was for such purpose or pursuant to such an agreement that the American Tobacco Company made the Metropolitan Tobacco Company its sole sales agent in Greater New York. It is not alleged that any act of said corporations resulted in discrimination against, or in any manner wrongly or injuriously affected, any jobber or dealer in said city other than the plaintiffs. It is not suggested that the relations of the defendant corporations with the other corporations and persons alleged are for any reason illegal or wrongful under the laws of the state of New Jersey, under which they are incorporated; and there being no averment that in its growth and development the American Tobacco Company has at any time entered into an unlawful or forbidden combination or merger, or become a party to an illegal arrangement or agreement, we must assume that its relations with its allied companies are innocent and lawful; and that such is its legal status upon the record before us is abundantly supported by the decisions of our courts. U. S. Vinegar Company v. Foehrenbach, 148 N. Y. 58, 42 N. E. 403; Cameron v. N. Y. & Mt. Vernon Water Co., 62 Hun, 269, 16 N. Y. Supp. 757, affirmed 133 N. Y. 336, 31 N. E. 104; Rafferty v. Buffalo City Gas Co., 37 App. Div. 618, 56 N. Y. Supp. 288; Dittman v. Distilling Co. of America, 64 N. J. Eq. 537–544, 54 Atl. 570; Trenton Potteries Co. v. Oliphant, 58 N. J. Eq. 507–524, 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612.

This brings us to the consideration of the alleged agreement between the defendant corporations by which the Metropolitan was given by the American Tobacco Company and the corporations controlled by it the sole right and exclusive privilege of marketing, within Greater New York, all of their products. If by such agreement the American Company and the corporations controlled by it—assuming them to have been competitors—had constituted the Metropolitan Company their exclusive selling agent, with sufficient powers and rights to do away with and prevent competition among them, such arrangement might, within the decisions of Cummings v. Union Blue Stone Co., 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655, and Cohen v. Berlin & Jones Envelope Co., 166 N. Y. 292, 59 N. E. 906 have been properly held to have constituted an illegal combination in restraint of trade. No such facts are presented by the record. No such power or right was conferred upon the Metropolitan Company. The agreement alleged did not undertake to regulate, and does not by its terms in any manner relate to, competition between the several corporations or persons connected with them, nor does it purport to establish sales prices, output, or terms of sale, nor did it give to the Metropolitan Company any powers which the corporations themselves, united or severally, might not lawfully have exercised. The corporate defendants are not, and could not under any circumstances, be competitors. The one is a producer and manufacturer; the other, a nonproducing and nonmanufacturing wholesale and retail dealer. The producer may lawfully sell or refuse to sell to any person, and may establish the sales price and terms of sale of its products; and what it may lawfully do itself it may lawfully delegate to another, and the exercise of such delegated power by the other is as lawful as if exercised

by the producer itself. If the producer has a monopoly of its products, the selling through a sales agent adds nothing to it. If it has not such monopoly, the fact of selling its products through a sales agent is the mere marketing thereof, and does not create a monopoly. If, therefore, vice existed in this agreement or arrangement, it must be predicated on its results, namely, the refusal by the Metropolitan Company, through the exercise of its power as a sales agent, with the knowledge of its principal, to sell the products of the latter to the plaintiffs, to their inconvenience and damage.

The complaint evidently proceeds upon the theory that the plaintiffs are vested with the legal right to buy and deal in the merchandise manufactured and controlled by the defendants, and to be supplied at all times, as the demands of their customers require, upon complying with the conditions attached to the sale of such products, and paying therefor, with such amount thereof, as their business demands, and that a refusal to sell to them is a wrongful and actionable invasion of such right; but we are unable to discover in this record anything warranting or sustaining such theory. It is the well-settled law of this state that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever; and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice, or malice. It is a part of the liberty of action which the Constitutions, state and federal, guarantee to the citizen. It is not within the power of the courts to compel an owner of property to sell or part with his title to it, without his consent and against his wishes, to any particular person.

In all the cases to which our attention has been directed by the commendable industry of the learned counsel for plaintiff, where the plaintiff is an individual, he has been a party to the contract which he attacked and from which his cause of action arose, with one exception; but, conceding that, without being a party or privy to the sales agreement between the corporation defendants, the plaintiffs might maintain this action, and that such agreement was invalid, the power of the courts would yet be limited to the declaration of its invalidity. They could not grant the relief sought, and compel such corporations to sell their products to the plaintiffs. Having the legal right to refuse to longer sell their products to the plaintiffs, and having exercised that right in a lawful manner, the motives of the defendants leading to their action are not open to question. Phelps v. Nowlen, 72 N. Y. 39, 28 Am. Rep. 93; Kiff v. Youmans, 86 N. Y. 324, 40 Am. Rep. 543; Lough v. Outerbridge, 143 N. Y. 271, at page 282, 38 N. E. 292, at page 296, 25 L. R. A. 674, 42 Am. St. Rep. 712.

With the exceptions of Park & Sons Co. v. National Druggists' Association, 175 N. Y. 1, 67 N. E. 136, 62 L. R. A. 632, 96 Am. St. Rep. 578, and Straus v. American Publishing Association, 177 N. Y. 473, 69 N. E. 1107, 64 L. R. A. 701, 101 Am. St. Rep. 819, the principles declared in the large number of authorities cited by the appellants to sustain the propositions they advance, are not applicable to the facts presented in the case under consideration. In Cummings v. Union Blue Stone Co., supra, and similar cases cited, the contracts challenged

were, for apparent and sufficient reasons, held illegal and void as being in restraint of trade; but the reasons forming the basis of such decisions do not exist in the case at bar. The contract challenged in this action contains no element· rendering it void, either as being in restraint of trade or as creating a monopoly; and, being free from the vices condemned by the cases referred to, it is not affected or controlled by their decisions. United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, and similar cases, were actions brought by the Attorney General under the provisions of the federal statutes, the provisions of which controlled their disposition. Montague v. Lowry, 115 Fed. 27, 52 C. C. A. 621, and kindred cases, were brought under the provisions of section 7 of the federal statutes (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]) by persons injured in business through acts declared unlawful by such statutes, to recover the threefold damages by such section authorized. Curran v. Galen, 152 N. Y. 53, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496, and similar cases, cited from the Massachusetts and New Jersey Reports, were questions involving the rights of company members of labor organizations to agree with others not to employ or to retain in their employ persons refusing to connect themselves with organized labor, which agreement is in this state made a misdemeanor by section 171a of the Penal Code, and was consequently held unlawful. The principles involved in such cases have no application in the case at bar. People v. North River Sugar Refining Co., 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843, and People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062, 27 L. R. A. 437, 45 Am. St. Rep. 609, were actions to dissolve corporations for acts committed in violation of law. Matter of Davies, 168 N. Y. 89, 61 N. E. 118, 56 L. R. A. 855, was a proceeding by the Attorney General, under section 3 of the Donnelly act, to procure the information therein provided for. People v. Sheldon, 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690, and People v. Duke, 44 N. Y. Supp. 336, 19 Misc. Rep. 292, were criminal cases involving the question of the indictability of the acts on which their prosecution was based.

In neither the Park nor Straus Cases is there any suggestion that a manufacturer or producer does not possess the absolute right of dominion and control over his own products, or that he may not unite with other manufacturers or producers to exercise their legal rights in such manner as may be beneficial to their common interests, and not for an unlawful purpose. In his opinion in the Park Case Judge Martin said that the action was not brought to compel the manufacturer against his will or disposition to sell his goods to the plaintiffs; and Judge Bartlett, in the Straus Case, says:

"The refusal to maintain trade relations with a given individual is an inherent right which every person in business may exercise, for reasons he deems sufficient or for no reason whatever."

And, although this extract is contained in a dissenting opinion, its correctness is not challenged or questioned by the other members of the court. The Park Case upheld a trade arrangement between manufacturers and dealers in proprietary medicines, throughout the United

States, because of the fact that it involved only the exercise of this inherent right. In the Straus Case the combination was between independent proprietors, representing 90 per cent. of the book trade business in the United States on the one hand, and many independent booksellers and jobbers on the other, and provided for excluding from the business of selling books all persons refusing to be bound by the rules of the association. In the case at bar there is no allegation of any combination of competitors, but that the sole parties to the arrangement were a manufacturing corporation and producer and a sales or distributing agent; and while it is alleged that the manufacturing corporation controls the business of other manufacturers and producers, in the absence of averment to the contrary it must be presumed that such control was lawful and for lawful purposes. No agreement is alleged which could result in anything that either might not lawfully do singly, and the only interference with the business of others arising from the carrying out of such agreement was such as would have been the result of the exercise of the unquestionable right of either to refuse to sell its goods to any dealer. It is not alleged in the case at bar, as was established in the Straus Case, that sales prices were fixed by the American Tobacco Company, or that either defendant undertakes to interfere in any manner with or control the prices or terms upon which the products of other producers controlled by them are sold. Further, the element of threats, intimidation, and blacklisting, present in the Straus Case, were all withdrawn from the case at bar, and are not before us for consideration. These facts materially distinguish the Straus Case, and divest it of any controlling effect as to the disposition of the case under consideration.

While the plaintiffs allege an injury resulting from the acts of the defendants in refusing longer to sell them their products with which they had theretofore been furnished, such injury and attendant damages flow directly from the breach of the alleged contract with the American Tobacco Company to furnish such products at all times, and adequate and complete damages are recoverable therefor in an action at law, which excludes equitable cognizance of such facts as a sole cause of action. We concur with the learned trial justice that whatever vice may exist in the conditions and results presented by the complaint does not arise from the averred facts, and that the pleading does not state facts sufficient to constitute a cause of action, and was for that reason properly dismissed.

The judgment must be affirmed, with costs. All concur.

GAYNOR, J. (concurring). While there are allegations in the complaint of many corporations, the only defendants are the corporations the American Tobacco Company and the Metropolitan Tobacco Company, and three officers thereof. Out of the masses of confused and useless verbiage of the complaint, it is possible with painful diligence to pick out allegations that the defendant the American Tobacco Company is accociated with and controls a large number of corporations which, like it, are engaged in the manufacture and sale of the products of leaf tobacco; that these associated corporations control and market more than 90 per cent. of such products in this country and in the city

of New York; that no dealer or jobber in the tobacco business can successfully do business without obtaining and handling the products of the said associated corporations; that the defendant the Metropolitan Tobacco Company is not a manufacturer of tobacco, but is appointed by the said associated corporations their sole agent to sell their products in the city of New York, and is acting as such, and that such products can be purchased of it alone by dealers in tobacco products in the said city, the said corporations refusing to sell to them except through their said agent; and that the said agent, "with the knowledge and consent of the other defendants," refuses to sell any of the said products to the plaintiffs, who are jobbers and dealers in tobacco products in the said city. There is no allegation that any of the associated corporations is a party to such refusal, except the defendant the American Tobacco Company. Now, the American Tobacco Company, like any corporation or person, may lawfully refuse to sell its goods to the plaintiffs or to any one, for any reason or no reason— at all events unless it has such a monopoly that sufficient tobacco goods can be got of no one else, which is not alleged. If, however, it should combine with other corporations or persons to do so, that would be a combination in restraint of trade and unlawful. Straus v. Am. Pub. Ass'n, 177 N. Y. 473, 69 N. E. 1107, 64 L. R. A. 701, 101 Am. St. Rep. 819. The trouble with this complaint is that there is no allegation of such a combination. There is a mass of allegations of evidence (which a pleading should never contain) and other matter, which the diligent pleader may have meant in their sum total or effect for such an allegation, but they do not eke it out, try how you will. The allegation that the American Tobacco Company controls all of the other associated corporations does not dispense with the necessity of such an allegation. Though it may control them, that which is alleged as its act is not their act. Each of them is a legal entity and must in law act for itself. If the American Tobacco Company holds a majority of the stock of each of the other associated companies, and in that way, i. e., by the voting power of a majority of stock, controls each corporation, they are still separate legal entities which must act for themselves. That one corporation or person owns all or a majority of the stock of several corporations does not legally combine them. Each is still a separate entity and subject to the law against combination in restraint of trade, or any illegal combination. There can be no combination of such corporations except by the act or acquiescence of each, the very same as in the case of corporations without such a dominant stockholder common to all. The notion that several corporations with such a common dominant stockholder are thereby legally united, and free to act together in restraint of trade, is a false one. This complaint is lacking in any allegation of a combination of the corporations alleged, to refuse to sell goods to the plaintiffs. There must be such an allegation; and then it could be made out by evidence of the separate act of each, or the authorized act of the defendant the American Tobacco Company, or of the defendant the Metropolitan Tobacco Company, as the representative of all. The trouble is the lack of an allegation under which such evidence would be admissible.

The judgment must be affirmed.