Morton **SAVODNIK**, Plaintiff,

v.

**KORVETTES, INC., the Committee of the Retirement Plan of Korvette, Inc. and the Trustee of the Retirement Plan of Korvettes, Inc., Defendants.**

No. 78 C 43.

United States District Court,
E. D. New York.

April 23, 1980.

Gitomer, Schwimmer & Gitomer, Forest Hills, N. Y., for plaintiff; Fred Gross, Haddenfield, N. J., and Gary B. Berns, Forest Hills, N. Y., of counsel.

Parker, Chapin, Flattau & Klimpl, New York City, for defendant; Peter M. Panken

and Barbara M. Ryniker, New York City, of counsel.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants have moved to dismiss the Second Amended Complaint, in part or whole, pursuant to Federal Rules of Civil Procedure ("FRCP") 8, 9, 10, 12(b)(1), 12(b)(6), 12(e) and 12(f). Defendants urge that plaintiff has failed to satisfy minimal pleading requirements, failed to state a claim upon which relief can be granted, and that the complaint must fail for lack of jurisdiction over the subject matter and for failure to comply with Rules 8, 9, and 10 of the FRCP. Defendants further seek a more definitely stated complaint, and finally, request portions of the complaint be stricken in accordance with Rule 12(f). At oral argument the motions were denied, except the motion pursuant to FRCP 12(b)(6), and plaintiff was granted leave to amend Count Four of the complaint to allege wilfullness.

Plaintiff filed his original complaint in this action on January 10, 1978. The gravamen of that complaint is that defendants fired plaintiff after 13 years of service solely because they believed by so doing they could avoid the vesting of, and concomitant payments under, the defendants' employee pension plan. After motions to dismiss, plaintiff filed an amended complaint on May 2, 1978. Defendants again moved to dismiss, and plaintiff cross-moved to file a second amended complaint. By Order of this Court dated October 10, 1978, plaintiff's cross-motion was granted.

The first three causes of action of the second amended complaint involve application of the Employee Retirement Income Security Act ("ERISA") to the vesting provisions of the defendants' retirement plan, and therefore fall within the primary jurisdiction of the Internal Revenue Service. They are not involved in the present motion as defendants have amended their plan to conform to the IRS's interpretation, which results in granting plaintiff credited service from the beginning of employment with Korvettes. (*See* defendants' reply memorandum filed Feb. 7, 1980 at p. 2). The fourth, fifth, and sixth causes of action allege age discrimination, breach of implied contract, and tortious conduct of wrongful firing. This opinion is solely concerned with defendants' motion as directed to these alleged claims.

## FACTS

Morton Savodnik, plaintiff, was born May 29, 1923 and claims to have been continuously employed by defendant Korvettes, Inc. from October 7, 1963 to January 26, 1977, when he received notice his employment was being terminated. Mr. Savodnik contends that during his employment he received frequent promotions, annual increases in pay, and was never fined, demoted, or warned that his job performance was unacceptable. (S.A.C. ¶¶ 10–12). At the time of firing, Mr. Savodnik was a participant in The Retirement Plan of Korvettes, Inc. ("Plan") which is subject to regulation by ERISA, and is managed by defendant Trustee of The Retirement Plan of Korvettes, Inc. ("Trustee").

Savodnik seeks to sue:

"on behalf of the class of all employees of Korvette, Inc., who (a) were participants in any of its (or its predecessors') pension plans, (b) had completed ten or more total years of employment at the time they were fired or resigned from employment, (c) were fired or resigned on or after January 1st 1974; and (d) were deemed by the defendants, jointly and severally, to have forfeited their Employee's Accrued Benefits derived from Employer Contributions (. . . EABDEC) in the [Plan]." (S.A.C. ¶ 5).

Plaintiff's Fourth claim for relief is denominated "a protective cause of action" arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff admits he has not timely exhausted State remedies as set forth in 29 U.S.C. § 633(b), and that in this Circuit such failure is fatal. Due to a conflict between the Circuits on this issue,

however, he asserts this claim to preserve his right to actual and liquidated damages should this Circuit's construction of § 633(b) be reversed.

The Fifth claim asserts, under the common law, that plaintiff's employment was governed by an express or implied contract "pursuant to which discharge could only be had for good and lawful cause." (S.A.C. ¶ 47). Plaintiff alleges that he, and the class he seeks to represent, were not so discharged, but were unlawfully fired "because they were nearing retirement age and because under defendants' understanding of the minimum ERISA standards, management sought to prevent vesting of each class members EABDEC in Plan." (sic) (S.A.C. ¶ 51). Plaintiff contends such discharge constituted a breach of his, and the purported class', employment contract.

Finally, plaintiff's Sixth claim sounds in tort and is labelled "wrongful firing." Plaintiff claims he suffered a coronary attack as the result of this allegedly tortious conduct.

## DISCUSSION

### I

Plaintiff's request to amend his complaint again to plead his claim properly under the Age Discrimination in Employment Act of 1967 was granted at oral argument on February 8, 1980.

### II

■ New York cases involving oral contracts for permanent or lifetime employment have held that they may be unenforceable under the Statute of Frauds. *Supplee v. Hallanan*, 14 Misc.2d 658, 179 N.Y.S.2d 725 (N.Y.Co.1958), *aff'd*, 8 A.D.2d 708, 185 N.Y.S.2d 747 (1st Dept. 1958); *Harris v. Home Indemnity Co.*, 16 Misc.2d 586, 190 N.Y.S.2d 157 (N.Y.Co.1957), *aff'd*, 6 A.D.2d 861, 175 N.Y.S.2d 603 (1st Dept. 1958). We agree with defendants that *Weisse v. Engelhard Minerals & Chemicals*

*Corp.*, 571 F.2d 117 (2d Cir. 1978) compels dismissal of plaintiff's fifth claim for relief. *See* N.Y.Gen.Oblig.Law § 5–701(1) (McKinney 1964); *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968).

### III

■ The remaining issue is whether the law of New York recognizes a cause of action for the alleged tort of "wrongful firing." The traditional "employment at will" doctrine has been that employer or employee could terminate the contract at will (without reason). 9 Williston, Contracts § 1017 (Jaeger Ed.1967); Restatement (Second) Agency § 442 (1958). As recent commentary has indicated, the "employment at will" doctrine represents an area of the law undergoing dynamic development.[1] Indeed, one learned observer has described this legal dynamism, and its significance, in the boldest of terms:

> The relations between . . . employer and employee, have been subject to constant evolution during the history of Anglo-American law. It is not too much to say that this is the most important and far-reaching manifestation of the evolution of society, of human civilization, of the legal, social political, and economic relations of men and women with each other. There are no longer the old relations of owner and slave; . . . . [W]e are in the midst of a period in which the pot boils hardest and the process of change the fastest. 3A Corbin, Contracts § 674 at 205–6 (1960).

In many jurisdictions, careful assessments of "the best interest[s] of the economic system" and the "public good" have led courts virtually to re-write the traditional doctrine.[2] In New Hampshire, the Supreme Court has held "termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the

---

1. N.Y.L.J., November 2, 1979. "Employment at Will," John D. Feerick, p. 1.

2. See, for example, *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974).

employment contract." *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549, 551 (1974). In Massachusetts, courts have gone even further in abandoning the traditional doctrine. In *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1974), the court held that the written employment contract, which explicitly provided for termination without cause on written notice, contained "an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract." *Id.* at 1256. Moreover, the *Fortune* court, in dicta, implied that such a covenant of good faith was included in *every* contract. *Id.* at 1257, citing *Uproar Co. v. National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir. 1936).

In Ohio, "wrongful firing," or "abusive discharge," (or whatever appellation otherwise describes this tort) has been a recognized cause of action for some thirty years. Specifically, *Smith v. Frank R. Schoner, Inc.*, 94 Ohio App. 308, 311–12, 115 N.E.2d 25, 27 (1953) acknowledge that "where a principal has the right to terminate the authority of an agent at any time, such principal may not do so in bad faith and as a device to escape the payment of a broker's commission."

Chief Judge Haynsworth, applying South Carolina law, has held that an employer cannot terminate "contrary to equity and good conscience." *deTreville v. Outboard Marine Corp.*, 439 F.2d 1099, 1100 (4th Cir. 1971).

The Seventh Circuit, applying Missouri law, has determined the employment at will doctrine must be modified by a "good faith and fair dealing" standard. *Rees v. Bank Building and Equipment Corporation*, 332 F.2d 548, 550 (7th Cir. 1964).

And even in New York, courts have interpreted employment contracts to include an implied covenant of good faith where the compensation due the employee was based on length of service and the employee was discharged, apparently without cause, prematurely. *Zimmer v. Wells Management Corporation*, 348 F.Supp. 540 (S.D.N.Y. 1972).

We need not discuss in detail all the cases that have examined the employment relationship as it exists in contemporary society and held that a cause of action will lie for malicious discharge.[3] We need only note that the trend seems fairly clear.

Moreover, even if we ignore this unmistakable evolution, we firmly believe that on the truly extraordinary facts of this case, New York courts would rule as we do. Mr. Savodnik toiled over thirteen years for defendant.[4] He received frequent promotions and salary increases—indeed, he was virtually a model employee. By agreement, part

---

**3.** Our research has revealed a total of 13 jurisdictions that recognize the tort of "abusive discharge" when the firing is violative of some public policy, and six other states, including New York, arguably prepared to do so under propitious circumstances. States in the first category include: *Larsen v. Motor Supply Co.*, 117 Ariz. 507, 573 P.2d 907 (1977) (Arizona); *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (California); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (S.Ct. Ill.1978) (Illinois); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (S.Ct.Ind. 1973) (Indiana); *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Ky.App.1977) (Kentucky); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (S.Ct.Mass.1977) (Massachusetts); *Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (Ct.Apls.1976) (Michigan); *Monge v. Beebe Rubber Co., supra*, (New Hampshire); *O'Sullivan v. Mallon*, 160 N.J.Super. 416, 390 A.2d 149 (1978) (New Jersey); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (S.Ct.Or.1975) (Oregon); *Reuther v. Fowler & Williams*, 255 Pa.Super. 28, 386 A.2d 119 (Pa.Super.1978) (Pennsylvania); *Roberts v. Atlantic Richfield Co.*, 88 Wash.2d 887, 568 P.2d 764 (S.Ct.Wash.1977) (Washington); and *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (S.Ct.Apls.W.Va.1978) (West Virginia). States in the latter category are: *Lampe v. Presbyterian Med. Center*, 590 P.2d 513 (Colo.Apls.1971) (Colorado); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (S.Ct.Idaho 1977) (Idaho); *Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454 (S.Ct.Iowa 1978) (Iowa); *Stephens v. Justiss-Mears Oil Co.*, 300 So.2d 510 (Ct.Apls.La.1974) (Louisiana); and *Chin v. American Telephone & Telegraph*, 96 Misc.2d 1070, 410 N.Y.S.2d 737 (N.Y.Co.1978) (New York).

**4.** Again we note that for purposes of a 12(b)(6) motion we accept plaintiff's allegations as true.

of the compensation he was to receive for his labors was a pension, the rights of which were to vest after fifteen years of covered service. Mr. Savodnik faithfully discharged his responsibilities; defendant, virtually at the eleventh hour, then sought to avoid its responsibility to contribute to the Plan by discharging Mr. Savodnik. In its papers defendant does not deny this scenario—indeed, they seem to agree they discharged Mr. Savodnik for this very purpose, and urge that however contemptible such behavior may be, it is simply not illegal. Defendants thus place themselves in a position where they acknowledge they do not, in good faith, abide by their own agreements. Defendants' conduct smacks of the unconscionable.

While no case in New York has yet recognized the tort of abusive discharge, precedent does suggest New York courts will do so when presented with the proper case. In *Chin v. American Telephone & Telegraph*, 96 Misc.2d 1070, 410 N.Y.S.2d 737 (N.Y.Co. 1978), aff'd, 70 A.D.2d 791, 416 N.Y.S.2d 160 (1st Dept. 1979), the Court opined that although an abusive discharge claim was not presently recognized, the doctrine would be cognizable in New York if the plaintiff satisfied certain evidentiary burdens. "The doctrine of abusive discharge places upon the plaintiff the burden of persuading this court that (1) there is a public policy of this State that (2) was violated by the defendant." 96 Misc.2d at 1075, 410 N.Y.S.2d at 741. Judge Kassal, thus, not only indicated acceptance of the general doctrine, but also articulated the component elements of such a claim in this jurisdiction. Moreover, he virtually invited recognition of such law by stating, in otherwise unnecessary dicta, that "this court is not averse to recognizing new causes of action . . . where clearly warranted." 96 Misc.2d at 1075, 410 N.Y. S.2d at 741.

The motion to dismiss in *Chin* was thus granted not because the New York Supreme Court was unwilling to embrace the theory of abusive discharge, but rather, because "plaintiff . . . has not sustained his burden of persuasion." *Id.* The case at bar presents vastly different circumstances. Plaintiff here has alleged, and defendants have not repudiated, that plaintiff was a model employee at Korvettes, and was terminated solely to deprive him of his pension benefits.

There is strong public policy in New York favoring the protection of integrity in pension plans. This policy is not one of vague origin, or arguable statutory construction—its basis is the Constitution of the State (Art. 5, § 7). Moreover, New York law cannot be contrary to ERISA, one of the purposes of which is "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . . ." 29 U.S.C. § 1001. Enactment of ERISA itself testifies to the great significance income security has for the millions of the country's retired population.

To allow an employer to avoid the vesting of rights in a pension plan after thirteen years of service by a model employee, under the guise of the employment at will doctrine, does not sit well with this Court. Such behavior not only suggests the employer never fully intended to comport with the spirit of the Plan, but also that it sought to avoid its obligations thereunder by systematically terminating its employees at will prior to the vesting of their rights under the Plan. Accepting plaintiff's allegations as true, as we must, defendant here has clearly violated New York's policy favoring the integrity of pension plans to protect the interests of the participants in such plans. If ever there were a case to invoke the doctrine of abusive discharge, this is it. Courts cannot hide in ivory towers ignoring the economic and social realities of modern society,[5] for it is that very

---

5. For those "so wedded to the status quo that critical analyses make them nervous" we note the admonition of one of this country's greatest legal minds:

"It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid

society we are here to serve. As that society changes, so must our thinking. We are convinced New York courts would recognize the abusive discharge doctrine on the facts of this case.

We cannot agree with defendants' interpretation of *James v. Board of Education*, 37 N.Y.2d 891, 378 N.Y.S.2d 371, 340 N.E.2d 735 (1975). That memorandum opinion was written before *Chin* and many of the recent developments in the evolution of the "wrongful firing" theoretical construct. The majority opinion in *James*, somewhat opaque due to its brevity, focused on the probationary nature of the plaintiff teacher's employment status, plaintiff's *effort to* "bootstrap himself around a motion addressed to the pleadings," 37 N.Y.2d at 892, 378 N.Y.S.2d at 371, 340 N.E.2d at 736, and plaintiff's "concocted notion that this case involves an infringement of his constitutional right to freedom of speech or expression." *Id.* Mr. Savodnik, in contrast, cannot be deemed to be (1) a probationary employee after some thirteen years of service; (2) "bootstrapping himself" around the instant motion; and (3) asserting first amendment violations against defendants. Such a terse pronouncement of the law on facts so dissimilar to those here cannot be precedent to bar plaintiff's action. Moreover, the vigorous dissents by Judge Cooke and Judge Fuchsberg in *James* clearly delineate the distinctions between that case and the case at bar.

## CONCLUSION

For the foregoing reasons:

(1) Defendants' motion to dismiss plaintiff's fourth claim *for relief is held in abeyance* as plaintiff has again been granted leave to amend the complaint insofar as this claim is concerned;

(2) Defendants' motion to dismiss the fifth claim for relief is granted; and

(3) Defendants' motion to dismiss the sixth claim for relief is denied.

SO ORDERED.

down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv.L.Rev. 457, 469 (1897).