**Mark T. SHAITELMAN and Richard R. Reigi, Plaintiffs,**

v.

**PHOENIX MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No. 79 Civ. 4488.

United States District Court,
S. D. New York.

Dec. 3, 1980.

On Motion For Reargument · March 5, 1981.

Jonathan W. Lubell, Marc Rauch, Cohn, Glickstein, Lurie, Lubell & Lubell, New York City, for plaintiffs.

Richard R. Lutz, Townley & Updike, New York City, for defendant.

## OPINION AND ORDER

PIERCE, District Judge.

This action for, *inter alia*, breach of contract, fraudulent misrepresentation, and wrongful discharge is brought by two group insurance salesmen against their former employer, the Phoenix Mutual Life Insurance Company, pursuant to 28 U.S.C. § 1332. The defendant has moved to dismiss Counts 3, 4, and 5 of the complaint for failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)).

*Count Three—Misrepresentation*

Plaintiffs allege that the defendant Life Insurance Company fraudulently induced them to continue in its employ by knowingly and falsely representing to them, both orally and in writing, that their earnings were unlimited and that they had the unlimited financial potential of commissioned salesmen although they were employees at will. (Complaint ¶¶ 57, 60, 65, 68). The plaintiffs also allege that the defendant falsely and fraudulently represented to them that they would receive monies earned and accumulated in the form of surplus credits thereby inducing plaintiffs to believe that they had a financial incentive to continue in the employ of the defendant. (Complaint ¶¶ 59, 60, 65, 68). Defendant moves to dismiss this cause of action as a mere restatement of the breach of contract claims alleged in Counts 1 and 2.

The New York Courts have long held that an action for fraudulent misrepresentation, independently pleaded, can constitute a cause of action which may be pleaded in addition to, or as an alternative to, an action for breach of contract. *North Shore Bottling Co., Inc. v. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968); *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *Hanlon v. McFadden Publications, Inc.*, 302 N.Y. 502, 510, 99 N.E.2d 546 (1951); *Mills Studio, Inc. v. Chenango Valley Realty Corp.*, 15 A.D.2d 138, 140–41, 221 N.Y.S.2d 684 (3d Dep't 1961). In *Shapiro v. Dictaphone Corp.*, 66 A.D.2d

882, 884, 411 N.Y.S.2d 669 (2d Dep't 1978) the court distinguished between these two causes of action:

"In our opinion, the thrust of plaintiff's first cause of action is that Dictaphone entered into the agreement with the undisclosed intention to induce the other party to perform in reliance upon the agreement ... thus, the first cause of action alleging fraud is in tort, not in contract. It depends not upon an agreement between the parties, but rather upon deliberate misrepresentation of facts, relied on by the plaintiff to his detriment. One who fraudulently misrepresents himself as intending to perform an agreement is subject to liability in tort whether the agreement is enforceable or not."

The alleged assurances of the defendant Phoenix that the plaintiffs' earned surplus credits constituted "money in the bank," "building a bank account," and "a gold mine" (complaint ¶¶ 59 & 67) are likewise actionable. As the court concluded in *Sabo v. Delman*, 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957) "the statements and representations here relied upon and alleged are likewise actionable, for here, too, there was 'specific affirmation' of an arrangement under which something was to be done when the party making the affirmation knew perfectly well that no such thing would be done."

The string of cases relied upon by the defendant for the proposition that New York Courts will disallow an alternative pleading of fraud in an action for breach of contract are inapposite. In a number of those cases the plaintiff brought an action for fraud rather than for breach of contract or alleged a fraudulent breach of contract in order to circumvent the shorter statute of limitations which attaches in an action for breach of contract. *Brick v. Cohn-Hall Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937); *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 457 F.Supp. 765, 770 (E.D. N.Y.1978). Still others of the cases relied upon by defendant pertain to situations where no independent claim of fraud was set forth in the pleadings. Rather, the plaintiffs in those actions pleaded fraudulent breach of contract or breach of contract with fraudulent intent. *Miller v. Columbia Records*, 70 A.D.2d 517, 415 N.Y. S.2d 869 (1st Dep't 1979); *Chase v. United Hospital*, 60 A.D.2d 558, 400 N.Y.S.2d 343 (1st Dep't 1977); *Regnell v. Page*, 54 A.D.2d 540, 387 N.Y.S.2d 253 (1st Dep't 1971), *aff'd*, 35 N.Y.2d 669, 360 N.Y.S.2d 886, 319 N.E.2d 201 (1974).

In *Luxonomy Cars, Inc. v. Citibank*, 65 A.D.2d 549, 408 N.Y.S.2d 951 (2d Dep't 1978), a case relied upon heavily by Phoenix, the plaintiff made no independent allegation of fraud, but rather charged that the defendant had become liable in tort for behaving "recklessly" and "in bad faith." The court determined that a tort action may accompany a breach of contract suit where the contract creates a relationship out of which springs a duty independent of the contractual obligation and that independent duty is also violated. *Id.* at 550, 408 N.Y.S.2d 951. Here, the defendant allegedly breached a duty independent of the contract by making affirmative misrepresentations to induce plaintiffs' continuing performance and reliance. Upon these circumstances, a claim for fraudulent misrepresentation pleaded with a claim for breach of contract will survive a *motion to dismiss*.

Accordingly, the defendant's motion to dismiss Count 3 of the complaint is denied.

### Count 4—Wrongful Discharge

In Count 4 plaintiffs allege that Phoenix wrongfully, fraudulently and illegally terminated their employment because of their refusal to relinquish, without compensation, their right to be paid as promised for credits earned and accumulated during their period of employment with the defendant. (Complaint ¶¶ 73, 76). Additionally, plaintiffs allege that they have sustained damages including, but not limited to, the loss of future override renewal commissions on Phoenix policies sold by plaintiffs prior to their termination. For the reasons stated below, defendant's motion to dismiss Count 4 is granted.

■ In New York, "[i]t is well settled that unless there is a definite period of service specified in a contract, the hiring is at will and the employer has the right to discharge and the employee to leave at any time, without advance notice, and neither has any cause of action against the other . . . . Stated in other terms, an employee who does not work under an agreement for a definite term of employment may be discharged at any time, with or without cause . . . ." *Grozek v. Ragu Foods, Inc.*, 63 A.D.2d 858, 406 N.Y.S.2d 213 (4th Dep't 1978). *Accord, Parker v. Borock*, 5 N.Y.2d 156, 159, 182 N.Y.S.2d 577, 156 N.E.2d 297 (1959); *Chase v. United Hospital*, 60 A.D.2d 558, 559, 400 N.Y.S.2d 343 (1st Dep't 1977); *Walford v. British Caledonian Airways*, 52 A.D.2d 922, 383 N.Y.S.2d 401 (2d Dep't 1976); *Cartwright v. Golub Corp.*, 51 A.D.2d 407, 409, 381 N.Y.S.2d 901 (3d Dep't 1976); *Powell v. Board of Higher Education of the City of New York*, 38 A.D.2d 541, 327 N.Y.S.2d 292 (1st Dep't 1971), *aff'd*, 30 N.Y.2d 889, 335 N.Y.S.2d 438, 286 N.E.2d 921 (1972); *Laiken v. American Bank & Trust Co.*, 34 A.D.2d 514, 308 N.Y.S.2d 111 (1st Dep't 1970).

That New York courts continue to adhere to the principle that employment contracts for an indefinite period of time are terminable at will is demonstrated by two recent cases wherein claims of wrongful discharge were resolved in favor of defendant employers. *Edwards v. Citibank*, 75 A.D.2d 553, 425 N.Y.S.2d 327 (1st Dep't 1980), affirming 100 Misc.2d 59, 418 N.Y.S.2d 269 (Sup.Ct.N.Y.Co.1979); *Marinzulich v. National Bank of North America*, 73 A.D.2d 886, 423 N.Y.S.2d 1014 (1st Dep't 1980), affirming without opinion a decision in Supreme Court, New York County (Index No. 01815/79, May 7, 1979).

The primary case relied upon by the plaintiffs is not to the contrary. In *Chin v. AT&T*, 96 Misc.2d 1070, 410 N.Y.S.2d 737 (Sup.Ct.N.Y.Co.1978), *aff'd*, 70 A.D.2d 791, 416 N.Y.S.2d 160, the Court held that an employee at will may maintain an action for wrongful discharge if he can demonstrate that the defendant has violated a public policy of New York State which is "derived from or bottomed on New York constitutional, statutory or decisional law." *Id.* at 1075, 410 N.Y.S.2d 737. In *Chin* the underlying public policy was one which prohibited a private employer from discharging an employee because of the employee's political beliefs, activities or associations. *Id.* No such public policy has been identified in the instant action.

In order to convert their termination into a legally cognizable action for wrongful discharge under *Chin*, the plaintiffs rely on a public policy that every contract in New York contains an implied covenant of good faith and fair dealing. *Kirke Le Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163 (1933). They contend that a termination such as theirs violates principles of good faith and fair dealing and is, therefore, against public policy. However, *Kirke Le Shelle* articulated the requirement of good faith in a situation wholly unrelated to employment contracts which are terminable at will. The defendant cites no case for the proposition that a failure to deal in good faith in an employment contract terminable at will is a violation of public policy which would trigger the *Chin* doctrine.

For these reasons, the defendant's motion to dismiss the fourth claim for relief is granted.

*Count 5—Refusal to Deal*

By amended complaint plaintiff Shaitelman added a fifth cause of action for *prima facie* tort alleging that defendant Phoenix maliciously and unjustifiably refused, subsequent to his termination, to accept business from him on the same terms as it does from other non-Phoenix agents. (Amended complaint ¶¶ 83, 84, 88, 89, 90, 91).

■ The parties agree that for an action to lie in *prima facie* tort five elements must be established: (1) the intentional infliction of harm; (2) without excuse or justification; (3) by an act or series of acts which would otherwise be lawful; (4) resulting in actual temporal damage; and (5) not classified as any other recognized tort. *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977).

If we were to assume *arguendo* that Shaitelman's allegations in ¶¶ 90 and 91 of the amended complaint constitute a sufficient showing of Phoenix's intent to harm him (the first element), it is a question of fact as to whether Phoenix intended that the harm should result "as a collateral consequence of [its] refusal to continue a business relationship terminable at will." *House of Materials, Inc. v. Simplicity Pattern Co.*, 298 F.2d 867, 872 (2d Cir. 1962). It is important to note that the refusal to deal in *Simplicity Pattern* was based upon plaintiff's initiation of the lawsuit whereas in the instant case the alleged refusal to deal preceded the litigation. The reasoning of the Second Circuit is nonetheless apposite. The Court declared that "it generally has been held that fundamental assumptions in free business enterprise, including the belief that each business enterprise must be free to select its business relations in its own interest, may justify or excuse the act of one who causes harm to another as a collateral consequence of his refusal to continue a business relation terminable at will." *Id.* at 872–873. In *Green v. Victor Talking Machine Co.*, 24 F.2d 378 (2d Cir.), *cert. denied*, 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928), the Circuit reached a similar result. "Even the most ardent advocates of the principle that the intentional infliction of temporal harm requires a justification have stopped short of asserting that it applies to harm resulting from non-action, in the absence of facts creating a duty to act .... The defendant owed the [plaintiff] no duty to continue dealing with it in the absence of a contract so to do ...." *Id.* at 382.

■■■ Phoenix's decision not to deal with Shaitelman is buttressed by the fact that the defendant is under no *duty* to accept Shaitelman or anyone else as its agent for the sale of insurance. It is "well-settled law" in New York that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reason whatever. *Locker v. American Tobacco Co.*, 121 App.Div. 443, 451, 106 N.Y.S. 115 (2d Dep't 1907), *aff'd*, 195 N.Y. 565, 88 N.E. 289 (1909). The *Locker* Court concluded that "[i]t is not within the power of the courts to compel an owner of property to sell or part with his title to it, without his consent and against his wishes, to any particular person." *Id.* at 443, 106 N.Y.S. 115. *Accord, Califano v. Traveler's Insurance Co.*, 63 Misc.2d 296, 297, 311 N.Y.S.2d 401 (Sup.Ct.Nassau Co. 1970). Thus, Shaitelman has failed to satisfy the first element of the pleading requirements.

Shaitelman has also failed to plead the special damages required for a showing of "actual temporal damages." The fourth element requires a "particularized statement of the reasonably identifiable and reasonable losses suffered." *Skouras v. Brut Productions, Inc.*, 45 A.D.2d 646, 648, 360 N.Y.S.2d 811 (1st Dep't 1974). Plaintiff Shaitelman's estimate of $250,000 in damages in ¶ 92 of the amended complaint does not satisfy the requirement that special damages be demonstrated. "Round figures, with no attempt at itemization, must be deemed a representation of general damages." *Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 441, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960). *Accord, Leather Development Co. v. Dunn & Bradstreet, Inc.*, 15 A.D.2d 761, 224 N.Y.S.2d 513 (1st Dep't 1962).

Thus the Court concludes that plaintiff has failed to satisfy the pleading requirements necessary to maintain an action for *prima facie* tort. Accordingly, the defendant's motion to dismiss the fifth cause of action is granted.

*CONCLUSION*

For the reasons set forth above the defendant's motion to dismiss is granted as to Counts Four and Five of the complaint and denied as to Count Three.

ON MOTION FOR REARGUMENT

Plaintiffs move pursuant to Rule 9(m) of the General Rules of the Court [1] for reargu-

---

1. Effective October 31, 1980 motions for reargument are properly brought pursuant to Rule 3(j) of the Civil Rules of the District Court for the Southern District of New York.

ment of this Court's Opinion and Order of December 3, 1980 dismissing plaintiffs' fourth cause of action for wrongful discharge.

Plaintiffs direct the Court's attention to two cases—*Savodnik v. Korvettes, Inc.*, 488 F.Supp. 822 (E.D.N.Y.1980) and *Zimmer v. Wells Management Corporation*, 348 F.Supp. 540 (S.D.N.Y.1972)—which they contend support the proposition that a failure to deal in good faith in an employment contract terminable at will is a violation of public policy. Upon review of both cases the Court adheres to its previous Opinion and Order and denies the motion for reargument. The cases cited are clearly distinguishable.

In *Zimmer* Judge Brieant found an implied covenant of good faith and fair dealing in a written one year employment contract wherein compensation was predicated upon length of service and the employee was discharged, apparently without cause, prior to the expiration of the agreement. The agreement herein was not for a specific term of years nor was it memorialized in a writing. It was an agreement terminable at will in which, absent a public policy to the contrary, *Chin v. American Telephone & Telegraph*, 96 Misc.2d 1070, 410 N.Y.S.2d 737 (Sup.Ct.N.Y.Co.1978), *aff'd*, 70 A.D.2d 791, 416 N.Y.S.2d 160 (1st Dept. 1979), there is no cause of action for abusive discharge.

Relying on *Chin, supra*, Judge Platt in *Savodnik* found such a public policy, to wit, protecting the integrity of pension plans, and invoked the doctrine of abusive discharge. *Savodnik* was clearly extraordinary on its facts; the defendants admitted they had discharged the plaintiff to avoid the vesting of his pension rights. Confronted with this admission Judge Platt acknowledged that "no case in New York has yet recognized the tort of abusive discharge," *Savodnik, supra*, at 826; he concluded, however, that he was "convinced that New York Courts would recognize the abusive discharge doctrine on the facts of this case." *Id.* at 827.

The termination herein involves no such extraordinary facts. The Court affirms its previous finding that plaintiffs have failed to demonstrate a public policy "derived from or bottomed on New York constitutional, statutory or decisional law," *Chin, supra*, 96 Misc.2d at 1075, 410 N.Y.S.2d 737, which the defendant's action has violated. Absent this finding there can be no cause of action for abusive discharge.

The motion for reargument is denied. The parties are directed to appear before the undersigned for a pretrial conference on Thursday, March 17, 1981, at 9:30 in the forenoon in courtroom 110.

SO ORDERED.