Samuel Di Falco, J.
Plaintiff sues to have declared void the sale of a business which was made between the defendants and plaintiff further seeks the appointment of a receiver of the assets of the said business. The action is bottomed upon the failure of the defendant to comply with the Bulk Sales Law, section 44 of the New York Personal Property Law. The H-M Publishing Corporation (hereinafter referred to as H-M) was the seller of the business. The defendant the American Mercury Magazine, Inc. (hereinafter referred to as Mercury) was the purchaser. The evidence established that plaintiff had loaned the sum of $6,000 to H-M and received in return a promissory note therefor dated March 21, 1952, payable in full with interest, on December 31, 1953. The note was not paid and thereafter plaintiff sued H-M and recovered a judgment upon the note on June 16, 1953. In the interim, after the making and delivery of said note, H-M on July 28,1952, sold its entire business to Mercury pursuant to a written agreement hereinafter more fully referred to. The judgment remains unsatisfied and plaintiff thereupon instituted the present action against both H-M and Mercury. Mercury has appeared and answered in the action.
It is conceded by Mercury that neither it nor H-M followed the procedure or conformed with the requirements of the Bulk Sales Law. Defendant takes the position that it did not have to comply with that law because the nature of its business and the nature of the sale thereof was not such as brought it within the application of the Bulk Sales Law. The factual proof before me shows that H-M by written agreement of sale, dated July 28, 1952, sold to Mercury its entire business. The business of H-M was that of publisher and owner of the monthly magazine called “ The American Mercury ”. Specifically stated and enumerated in the said contract of sale as being sold by H-M and purchased by Mercury are the following: All of the right, title and interest of H-M in and to the monthly magazine called “ The American Mercury ” and the names “ The American Mercury ” and “ The New American Mercury ”, together with the business and good will relating to the publication with the business and good will relating to the publication of said magazine, including the following property listed in schedules annexed to the agreement of sale: (a) trade names, trade-marks and copyrights; (b) full subscription list for the magazine showing the net unfulfilled subscriptions; (2) full list of advertising contracts *588 and orders for space in said magazine for the October, 1952 and subsequent issues, which contracts have been performed to date and are in full force and effect; (d) full list of manuscripts and other literary property owned by H-M free and clear of any claims, and that H-M has full publishing rights in said property; (e) full list of agreements for the manufacture and distribution of said magazine, including contracts for the furnishing of paper and printing, the lease of oEce and other space and insurance policies connected with the business; (f) full list of oEce furniture and equipment used or useful in the publication of the magazine, excluding current stocks of ofice supplies on hand; (g) full list of deposits made by H-M with governmental agencies and public utility companies in connection with the furnishing of services to H-M including second-class mailing privileges and telephone service.
It is to be noted that by the specific terms o'f the agreement H-M represented and warranted that the property was sold free and clear of all incumbrances, liens and claims and H-M expressly indemnified and agreed to hold harmless Mercury from any and all claims, obligations and liabilities of whatsoever nature. It is admitted by H-M that it did not disclose to Mercury its indebtedness to plaintiff. Nor did Mercury have any knowledge of such indebtedness at the time of the aforesaid sale. It is further admitted by defendant that no notice of the sale between it was given to plaintiff or to any other creditors of H-M and that defendant in nowise complied with the requirements of the Bulk Sales Law.
Mercury contends that it was not required to comply with the Bulk Sales Law because H-M contracted out the printing of the magazine to an independent printing company; that H-M was not engaged in the printing business and did not own or sell to Mercury any printing presses, machines or other machinery or fixtures or paper, ink, or other stock of materials or supplies such as might be owned by a company engaged in the business of printing books, magazines or other printed matter.
With the record of factual evidence and documentary proof before me, I cannot arrive at any conclusion other than that this sale and transfer, lock, stock and barrel, of the entire business of a going concern without compliance with the Bulk Sales Law was void as against the creditors of H-M.
Mr. Yarbrough, president of Mercury, testified that after the transfer took place, Mercury moved into the premises occupied by H-M; that H-M surrendered the premises to Mercury which then took over the entire oEce equipment and proceeded with the carrying on of the business; nothing was left to H-M after *589 the transfer took place hut everything was surrendered to Mercury ‘ ‘ lock, stock and barrel whatever there was that comprised that publication ”. Yarbrough further testified that Mercury did not receive any list of the creditors of H-M Publishing Corporation nor was a written notice sent by Mercury to any of the creditors of H-M prior to the date of the taking over of the business and its assets, and further that H-M removed nothing from the premises.
I am not persuaded with the narrow construction sought to be placed by the defendant upon the application of the Bulk Sales Law to the facts of this case. That construction is not reasonable. It would be a circumvention of the Bulk Sales Law to permit a particular type of business, such as defendant’s, to avoid the requirements of the statute simply because they assert that they conduct their business in a particular manner and that they do not carry stock on hand or have machinery. The facts are established that defendant H-M borrowed $6,000 from plaintiff; did not repay said sum; that plaintiff obtained a judgment against H-M and that H-M sold its entire business to Mercury without making provision for the payment of its obligations and without notice of the sale to plaintiff or any other creditor.
I am of the opinion that clearly applicable is the language in the case of Bimberg & Co. v. Unity Coat & Apron Co. (150 Misc. 836, 838-839, affd. 244 App. Div. 777):
“ Though the provisions of section 44 are in derogation of the common law, its design and spirit must be accorded consideration. The section is not exempt from the rule of reasonable construction. It is also protectory and remedial; it provides protection and a remedy to creditors.
“ To infuse section 44 with vitality and invest it with efficacy, the term' merchandise ’ is not to be given a pinched and circumscribed interpretation. The law should not be so narrowed as to nullify its aim or weaken its purport. The phrase ‘ stock of merchandise, or merchandise and of fixtures,’ is much broader than the defendant ascribes to it. Without undertaking the hazards of defining the term or prescribing its limits, it is patent that the term has a more comprehensive significance and scope than that which the defendant allots to it. It seems clear that the commercial enterprise which the judgment debtor conducted was within the intent and contemplation of the section.
‘ ‘ The circumstance that the linens were rented instead of sold over the counter does not destroy the ‘ merchandise ’ character of the goods. She divested herself of the entire business. The law was intended to embrace certain commercial sales in bulk rather than sales of any particular business.
*590 “It is the character and effect of the sale, rather than the nature of the business, that supplies the chief test.
“ I am convinced that the sale here involved ‘ the whole of ’ the judgment debtor’s ‘ stock of merchandise ’ and all ‘ fixtures pertaining to the conducting of the business of the seller, ’ and thus came within both the letter and spirit of section 44. Since the provisions of that section were not complied with, the sale was void as against the judgment creditor plaintiffs.”
In Stumpp & Walter Co. v. Napanoch Country Club (198 Misc. 600), the now well-established construction of section 44 of the Personal Property Law was stated as follows: “ While some of the earlier cases, cited by defendants, adopt a restrictive interpretation of the statute and hold that it does not apply to a transaction such as this, the later cases reach a contrary conclusion. These hold that the amendment of the statute in 1934 (L. 1934, ch. 158) so as to include within its scope a bulk sale of ‘ of fixtures ’ indicates a legislative intention to broaden the operation of the law.”
In Geiger v. Louis Yasser, Inc. (178 Misc. 526, affd. 265 App. Div. 1046) it was held that this section must be reasonably construed to carry out its avowed purpose to provide protection and a remedy for creditors against a preferential transfer by a debtor not in the ordinary course of retail business. And in Carl Ahlers, Inc., v. Dingott (173 Misc. 873) the statute was held applicable to a sale of fixtures and a lease, notwithstanding no merchandise was sold.
In view of the foregoing, I find in favor of the plaintiff against the defendants for the relief demanded in the complaint. This constitutes the decision of the court as required by section 440 of the Civil Practice Act. The defendant Mercury is appointed receiver of all the assets that have come into its possession by virtue of the transfer and sale. Settle judgment accordingly.