**Myron P. GORDON, as Trustee in Bankruptcy of Motel City, Inc., Bankrupt, Plaintiff-Appellant,**

v.

**MOTEL CITY "B" ASSOCIATES, Defendant-Appellee.**

**No. 89, Docket 32375.**

United States Court of Appeals Second Circuit.

Argued Oct. 1, 1968.

Decided Oct. 14, 1968.

Jack Rabin, New York City, for plaintiff-appellant.

William M. Kufeld, New York City (Lawrence Weiss, Carb, Luria, Glassner, Cook & Kufeld, New York City, of counsel), for defendant-appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The issue before us is whether New York's Bulk Sales Law, Personal Property Law, McKinney's Consol.Laws, c. 41, § 44, applies to the sale and immediate leaseback of the furnishings of a motel as part of a real estate transaction. Gordon, as trustee in bankruptcy for Motel City Inc. [hereinafter Motel City] brought this action under § 70(e) of the Bankruptcy Act against Motel City "B" Associates, a general partnership [hereinafter Associates]. Both sides moved for summary judgment. The court below, Ryan, J., found there was no genuine issue of material fact and granted summary judgment in favor of Associates. From this judgment the trustee appeals. We affirm.

The pertinent facts are not in dispute. Motel City entered into four separate ground leases as tenant with New York State Realty Terminal Company (a division of the New York Central R.R.) as landlord, affecting the real property located between Tenth and Eleventh Avenues and running roughly from 40th of 44th Streets. Motel City then built a complex of four motel units on this land, called, with logic if not imagination, "A," "B," "C," and "D." On July 10, 1961, the entrepreneurs behind Motel City, Harry G. Silverstein, Larry A. Silverstein, and Bernard H. Mednick [the "Silversteins"] contracted to buy and leaseback the leasehold of "B" including the furniture and furnishings of the motel. Before the closing of this transaction, the Silversteins assigned the contract to Associates, a general partnership in which the Silversteins were the managing partners. The sale was completed between Motel City and Associates on October 13, 1961, for a price of $630,-000 subject to a $900,000 mortgage on the leasehold and furnishings. At that time Motel City owed unsecured creditors nearly $2.5 million, but was not insolvent.

The venture was not a success. Motel City was adjudged bankrupt on August 19, 1963. The instant action was brought on July 31, 1964, less than two months before the Uniform Commercial Code, replacing § 44 of the Personal Property Law of New York, became effective in New York. It is not of small interest that we observe no claim by the trustee that Associates, the Silversteins or Motel City acted in bad faith; the sale and leaseback were genuine transactions. The only claim before us is that the transactions violated § 44 because the provisions of the act for adequate notice to creditors of the sale were not complied with.

Section 44 of the Personal Property Law was first enacted in 1902. At that time, and in the re-enactment of 1914, the statute applied solely to the bulk sale of "merchandise." The trustee concedes that this transaction does not involve "merchandise." In 1934, however, the statute was amended to read:

> "The sale * * * in bulk of any part or the whole of a stock or merchandise *or of fixtures*, or merchandise and of fixtures pertaining to the conducting of the business of the seller * * * otherwise than in the ordinary course of trade and in the regular prosecution of said business shall be void as against the creditors of the seller" unless certain notice requirements are met (emphasis supplied to show the phrase added by the 1934 amendment).

The interpretation of three words "or of fixtures" is at the core of this dispute. Shortly after this action was commenced on September 27, 1964, Art. 6 of the Uniform Commercial Code was adopted in New York, replacing all of § 44. By its terms Art. 6 applies only to the bulk sale of *merchandise* and it is clear that if we were free to apply the new law, the transaction before us would be valid. But, because the questioned transaction occurred during the life of § 44 we must construe the law then applicable.

Our research has revealed no case, nor have we been cited to one, in which the New York courts have decided whether a sale and leaseback of furnishings as here, was barred by the statute, thus voiding the sale of "fixtures" because no notice was given to creditors. We are compelled, therefore, to interpret § 44 as we believe the New York courts would if presented with the problem. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Bagnel v. Springfield Sand & Tile Co., 144 F.2d 65 (1st Cir. 1944), cert. denied, 323 U.S. 735, 65 S.Ct. 72, 89 L.Ed. 589 (1944). Because of the lack of precedent and in light of the ambiguous meaning of the word "fixture," cf. Coogan, Fixtures—Uniformity in Words or in Fact, 113 U.Pa.L.Rev. 1186 (1965), we are required to look to the purpose of the act and the evils that were intended to be eradicated by its enactment. See Sorrell v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Commonwealth v. Welosky, 276 Mass. 398, 177 N.E. 656 (1931).

Bulk Sales Acts were passed in many states during the early period of this century, largely at the urging of the National Association of Credit Men. The statutes sought to overcome the peril caused by the unscrupulous, but nonetheless poor merchant who, anticipating the insolvency of his going business, sold every chattel on the premises for whatever price the traffic would bear and then vanished from the scene, leaving his creditors empty-handed. Since the goods were often bought from the failing merchant by bona fide purchasers, the creditors had no recourse under the usual fraudulent conveyance laws. Billing, Bulk Sales Laws: A Study in Economic Adjustment, 77 U.Pa.L.Rev. 72 (1928). Section 44, therefore, was essentially an anti-fraud statute. See Sternberg v. Rubenstein, 305 N.Y. 235, 112 N.E.2d 210, 36 A.L.R.2d 1136 (1953); Seedman v. Friedman, 132 F.2d 290, 298 (2d Cir. 1942).

It is clear from the facts presented here that the instant transaction did not present the hazard of the fleet-footed merchant—for which the statute was intended. The real estate sale and immediate leaseback to the seller, Motel City, was the backbone of the transaction. Moreover, Motel City remained on the premises doing business as before and always available to its creditors. And the funds Motel City received in this sale were not squandered or misappropriated but plowed back into the business and used to pay creditors. Furthermore, the Silversteins were the principals in both Motel City and Associates; indeed, in the latter capacity they became personally liable as general partners and lost the restricted liability of the corporation Motel City.

Under these circumstances, it is appropriate that the transaction be considered in its entirety, focusing on the seller's intent. Young v. Gordon, 257 F. 846 (E.D.N.Y.1919). With this in mind, it becomes readily apparent that in no event can this be viewed as an effort by Motel City to do in its creditors. To the contrary, we see it as a bona fide undertaking to raise money for a business and its creditors. It would not serve the purpose of the act to void this transaction.

Moreover, as we have already made clear, the sale of the furnishings was only part of a larger real estate transaction involving the simultaneous sale and leaseback of the leasehold from New York State Realty to Motel City. And, in another jurisdiction it has been held that the sale of a building with all machinery and equipment used by the bankrupt on the premises was not a sale of "fixtures" within the meaning of a bulk sales act so long as there was no intention to defraud creditors. In re Elliott, 48 F.Supp. 146 (D.Kan.1942). We should be hesitant to construe a now repealed statute to cast a broad shadow of doubt on long completed real estate sales.

The trustee cites several cases which he urges require us to hold that § 44 applies to the sale of the furnishings here, but we are not persuaded for they are all clearly distinguishable. First,

not one of these cases involved a sale and leaseback arrangement. Thus, the likelihood of the devious maneuvering that the statute was designed to prevent was ever present. In Sapphire Corp. v. American Mercury Magazine, 3 Misc.2d 586, 138 N.Y.S.2d 286 (Sup.Ct.1955), for example, a publishing *business* was sold "lock, stock, and barrel" and the seller disappeared from the scene. In Cosmopolitan Equities Inc. v. Pacific Seafarers Inc., 41 Misc.2d 772, 246 N.Y.S.2d 412 (Sup.Ct.1963), the seller disposed of its entire interest in a *vessel* and it is clear that the creditors would not be able to follow in the vessel's wake. Again, in Carl Ahlers Inc. v. Dingott, 173 Misc. 873, 18 N.Y.S.2d 434 (Sup.Ct.1940), there was a complete sale of the business of a dairy store and a suggestion that the transaction was not entirely in good faith. Stumpp & Walter Co. v. Napanoch Country Club, 198 Misc. 600, 102 N.Y.S. 2d 489 (Sup.Ct.1950), on which the trustee relied heavily in the court below, held that the sale of *fixtures* and *merchandise* of a combination hotel, country store, and bar, was within § 44. But *Stumpp*, and the cases cited therein, involved a complete sale of the business with no leaseback. We have considered the other cases cited by the trustee and do not find in them any reasoned discussion of the problem nor any holding which would compel us to change our view that the act was not intended to have application to the facts in this case.

On the other hand, it is only proper that we state that the case on which Associates places major reliance, Wettlaufer v. Rogers, 172 Misc. 554, 15 N.Y. S.2d 644 (Sup.Ct.1939), holding the sale of a boarding house not to be within § 44 is equally unpersuasive. It relies simply on Stewart v. Sulger, 174 App. Div. 838, 161 N.Y.S. 489 (3d Dept. 1916), a similar holding, which was decided before the 1934 amendment and thus is not applicable. Given these inconclusive interpretations by the New York courts, it is best to rely, in the main, on the clear legislative purpose of the statute being interpreted.

Accordingly, we hold that § 44 of the New York Personal Property Law, now repealed, does not apply to this transaction. In view of our decision, it is not necessary to reach the other points raised by the parties. Affirmed.