**Vivien BONIUK, Plaintiff,**

v.

**NEW YORK MEDICAL COLLEGE, Michael Dunn, Al Lowenfels, Tom Cottrell, Donald Gromisch, Edward Wasserman, Samuel Rubin and John Keane, Defendants.**

**No. 80 Civ. 6011 (ADS).**

United States District Court,
S. D. New York.

April 12, 1982.

Alan E. Bandler, P. C., New York City, for plaintiff.

Kelley, Drye & Warren, New York City, for defendants; John F. Gibbons, Alan C. Becker and Sarah L. Reid, New York City, of counsel.

MEMORANDUM OPINION AND ORDER

SOFAER, District Judge.

■ This case is a concrete instance of the misguided use to which parties and attorneys have occasionally put diversity jurisdiction. The plaintiff has filed a complaint alleging numerous grounds for relief. All but one are now conceded to be meritless. The sole claim advanced in opposition to defendants' motion to dismiss is that of an allegedly abusive discharge. New York law is applicable, and no established precedent in New York state courts recognizes the tort of abusive discharge. Some lower court decisions suggest that a trend exists that might lead to the recognition of such a tort in New York. But at present, the established law of New York is that an individual employed without express contractual guarantees of job security may be terminated for no reason or for any reason not specifically proscribed by constitutional or statutory law.

The Court invited plaintiff to withdraw this suit, and to file it in state court, noting that there are limits to a federal court's authority to devise changes in the established law of a state. Plaintiff declined to do so. Consequently, the case must be dismissed because it fails to state a cause of action under established New York law.

Plaintiff has sued the New York Medical College and several individuals in connection with her termination from several job assignments as an ophthalmologist. She claims that defendants terminated her work assignments because she had given an interview to the *New York Times*, which resulted in an article suggesting that some student openings in the medical school were being sold for contributions amounting to as much as $100,000 each. The complaint asserted five claims: (1) breach of an implied understanding that plaintiff's employment would not be terminated without good cause; (2) breach of an implicit covenant of good faith and fair dealing that her employment would not be terminated without good cause; (3) violation of her constitutional right to speak to the press regarding defendant's admissions policies; (4) malicious termination of plaintiff's employment, with intent to injure and without economic justification, and in contravention of her reasonable expectancy not to be terminated except for good cause; and (5) wanton and willful infliction of injury to plaintiff. Plaintiff asked $500,000 on each of the first four claims, and $1,000,000 on the fifth.

Plaintiff has not claimed to be a tenured employee, or one with any contract of employment. In fact, she has relinquished her claims based on any form of employment contract, written or oral, express or implied. She has also relinquished her claim for willful and wanton infliction of harm. The only claim she still asserts is her claim for abusive discharge. In plaintiff's responding papers to the motion, the abusive discharge claim is the only one addressed, and at oral argument plaintiff's counsel stated that he would have voluntarily discontinued the other claims had he been asked to do so.

The tort of abusive discharge has been tentatively recognized by some lower courts in New York. *E.g., Murphy v. American Home Products Corp.*, Sup., 447 N.Y.S.2d 218 (1982); *Balancio v. American Optical Corp.*, Index No. 13229/80 (Sup.Ct. Westchester Co., Marbach, J., May 21, 1981) (cited in *Murphy, supra*); *Chin v. American Telephone & Telegraph Co.*, 96 Misc.2d 1070, 410 N.Y.S.2d 737, (Sup.Ct. New York Co. 1978), *aff'd.*, 70 A.D.2d 791, 416 N.Y.S.2d 160, *appeal dismissed*, 48 N.Y.2d 603, 421 N.Y.S.2d 1028, 396 N.E.2d 207 (1979). In *Chin* the trial court stated its belief that the state might, in the proper circumstances, recognize a cause of action for an employee discharged in violation of a clear public policy. Because a public policy was not clearly violated, however, plaintiff's claim was dismissed. *Murphy* recognized that the tort had not been established in New York, but upheld a claim of abusive discharge against a motion to dismiss because "[t]his case may or may not prove to be the turning point." The arguments for recognizing such a tort have been stated forcefully in a bar association report, *At Will Employment and the Problem of Unjust Dismissal, Report of the Committee on*

*Labor and Employment Law*, 36 Record of the Association of the Bar of the City of New York 170 (1981) ("*Bar Association Report*"), and in many articles, *e.g.*, Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L.Rev. 1816 (1980) ("*Protecting At Will Employees*"): DeGiuseppe, *The Effect of the Employment-At-Will Rule on Employee Rights to Job Security and Fringe Benefits*, 10 Fordham Urban L.J. 1 (1981): Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute*, 62 Va.L.Rev. 481 (1976); Blades, *Employment At Will* vs. *Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum. L.Rev. 1404 (1967). Moreover, in the past decade, many states have done what the recent New York trial court decisions suggest, modifying the at-will employment rule to provide varying measures of job security for individuals employed without contractual protection. *See Bar Association Report, supra*, 36 Record at 181–87, 207–14, nn. 109–167, especially note 130; *Protecting At Will Employees, supra*, 93 Harv.L.Rev. at 1818–24 & nn. 9–47.

The New York cases make clear, however, that to recognize the tort of abusive discharge would require important changes in the law of New York. Since 1895, *Martin v. New York Life Ins. Co.*, 148 N.Y. 117, 121, 42 N.E. 416, 417 (1895), and as recently as 1959, *Parker v. Borock*, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 (1959) (dicta), and 1975, *James v. Board of Education*, 37 N.Y.2d 891, 378 N.Y.S.2d 371, 340 N.E.2d 735 (1975), the New York Court of Appeals has held it to be the law of the state that hirings for an unspecified or indefinite period are freely terminable at the will of either party. Against the handful of recent trial court decisions suggesting that the doctrine should and will be changed, several recent Appellate Division cases, as well as the comparatively recent Court of Appeals decisions cited above, reaffirm the at-will rule. *E.g., Edwards v. Citibank*, 74 A.D.2d 553, 425 N.Y.S.2d 327 (1st Dept.), *appeal dismissed*, 51 N.Y.2d 875, 433 N.Y.S.2d 1020, 414 N.E.2d 400 (1980); *Chase v. United Hospital*, 60 A.D.2d 558, 559, 400 N.Y.S.2d 343, 344 (1st Dept.1977); *Vassallo v. Texaco, Inc.*, 73 A.D.2d 642, 422 N.Y.S.2d 747 (2d Dept.1979); *Cartwright v. Golub Corp.*, 51 A.D.2d 407, 381 N.Y.S.2d 901 (3d Dept. 1976); *Grozek v. Ragu Foods, Inc.*, 63 A.D.2d 858, 406 N.Y.S.2d 213 (4th Dept. 1978). Thus, despite some recent federal court statements that New York has or will recognize the doctrine of abusive discharge, *see Placos v. Cosmair, Inc.*, 517 F.Supp. 1287, 1289 (S.D.N.Y.1981)[1]; *Savodnik v. Korvettes, Inc.*, 488 F.Supp. 822, 824–27 (E.D.N.Y.1980); *but see Shaitelman v. Phoenix Mutual Life Ins. Co.*, 517 F.Supp. 21, 24 (S.D.N.Y.1980); *Pirre v. Printing Developments, Inc.*, 432 F.Supp. 840, 841 (S.D. N.Y.1977), the current law of New York is perhaps best summarized in the recent decision of Justice Shainswit:

> The day may be inevitable when the doctrine of abusive discharge will be a fixed principle in the substantive law of New York. But that day has not yet come . . . .

*Murphy v. American Home Products Corp., supra.*

■ A federal district court in diversity acts as a court of the state in which it sits. As such, it is required to apply the established law of the state. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Where the state's law is unclear, or has been called into question by a substantial body of state authority, the federal court must do its best to reach the result that would have been reached if the case had been brought in state court. *Gordon v. Motel City "B" Associates*, 403 F.2d 90 (2d Cir. 1968); *Cooper v. American Airlines*, 149 F.2d 355, 359 (2d Cir. 1945); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 208–

1. This Court, addressing but one of several claims that survived a motion to dismiss in *Placos*, stated that the tort of abusive discharge is cognizable in New York. As the present opinion reflects, however, only some lower courts have recognized the tort and they have done so tentatively and in the face of contrary rulings by higher tribunals. In these circumstances recognition of the tort by a federal court is not justified.

12, 76 S.Ct. 273, 279–281, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring). But where the state law is established, a federal court may not disregard it merely because some lower courts and commentators are calling for change. For several sound reasons a district court does not share the freedom of a state trial court to depart from a clear legal rule in the belief that it might or should be changed.

The historical basis for diversity-of-citizenship jurisdiction is to ensure a fair forum to noncitizens of the state in which the federal court sits. Congress has seen fit to extend jurisdiction beyond the need for a fair forum, so one could argue that the federal courts sit as a frequently available alternative to the state courts in order to derive the benefits of competing court systems. No rational view of the purposes of diversity supports the notion, however, that a district court should disregard established state law because of a perceived trend not yet manifested even in the state's appellate courts. Revision of established law causes inconsistent results between such cases and the majority of those decided by state judges, a consequence that undermines the historic purpose of the diversity jurisdiction. Nor is it part of a legitimate scheme of competing court systems for the federal courts to offer litigants a greater willingness than state judges to change the established doctrine that they are supposed to apply. A federal court's "assigned role is to predict and not to form state law." *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146, 147 (3d Cir. 1974). Prediction must be based on state case law in the area or in related fields, not on a federal judge's view of what state law should be. As a practical matter, federal judges have great freedom to revise state law, because of the cost and difficulty of appeals within the federal system, and because of the absence of any review by the state's highest court in all but the few states that have authorized references of unsettled questions. But this very freedom is the most powerful argument for restraint. A litigant seeking to revise state law should be encouraged to do so in the state courts, where authoritative review is available.

The notion that federal courts should engage in revising state common law seems based on the view that somehow such activism is necessary because state judges are less willing to innovate. Federal courts should not lend credence to this baseless view. State judges are no less clever, imaginative, or daring than federal judges, as the New York judiciary has amply demonstrated over several generations. In fact, on the very issue presented in this case, state court judges in the cases discussed above have delivered the opinions that have lent credence to the possibility that some revision of the state's law may be forthcoming. The leading decisions in other states as well are state-court decisions. *See, e.g., Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974); *Petermann v. Teamsters Local 396*, 174 Cal.App.2d 184, 344 P.2d 25 (1959). In short, there simply is nothing to the suggestion that a federal revisionary role is necessary, even if it were appropriate.

Finally, the federal courts must consider their other responsibilities in evaluating their proper role under diversity jurisdiction. While diversity cases are frequently interesting, often involving common law subjects, Congress through federal legislation has assigned vast responsibilities to the federal courts that only the federal courts can perform. The number of filings of cases arising under federal laws has steadily increased, demanding more and more time to process and decide. Federal courts should not reach out for additional, unnecessary roles, that will decrease their capacity to perform their undeniable responsibilities. *See* Speech by Chief Judge Wilfred Feinberg (December 10, 1981); Speech by Chief Justice Warren Burger (December 22, 1981).

It is true, of course, that despite these considerations a federal court sitting in diversity must not consider itself bound by old state court decisions if it "is convinced by other persuasive data that the

highest court of the state would [now] decide otherwise." *See West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); 1A J. Moore, *Federal Practice* ¶ 0.309[1] at 3115 & cases cited n. 10 (1980); *Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 846 (2d Cir. 1969); *Spector Motor Service v. Walsh,* 139 F.2d 809, 823 (2d Cir. 1944) (L. Hand, J., dissenting). The availability of "forum shopping" can be a two-edged sword. If federal courts were inexorably bound to outdated precedents that the state's highest court would clearly disregard, by obtaining a federal forum litigants—either plaintiffs or defendants exercising their statutory right to remove a case to federal court—could defeat the natural progress of the common law and their adversaries' right to argue for needed changes. *See IA J. Moore, Federal Practice, supra* at ¶ 0.309[1]. *See generally,* P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 708–10 (1973). But here the data suggesting that change in the established law may be imminent is unconvincing. Although the "at will" rule was adopted by New York in the heyday of now repudiated formalistic contract theories, *see Protecting At Will Employees, supra,* 93 Harv.L.Rev. at 1824–28, the Court of Appeals has reaffirmed it at least twice in recent years. While the reaffirmance was in dicta in one case, *Parker v. Borock, supra,* 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297, and is perhaps distinguishable in the other, *James v. Board of Education, supra,* 37 N.Y.2d 891,

378 N.Y.S.2d 371, 340 N.E.2d 735, see *Savodnik v. Korvettes, Inc., supra,* 488 F.Supp. at 827, the fact is that as recently as 1975 the Court of Appeals had the opportunity to reject or modify the "at will" doctrine and did not do so. Further, intermediate state courts have thus far consistently adhered to it. Consequently, this Court cannot say with any more certainty than could Justice Shainswit, *see Murphy v. American Home Products Corp., supra,* that the Court of Appeals would alter the rule in this case.[2] A state trial court, whose judgment is subject to review by the highest state court, is freer than this Court properly to initiate a change in state doctrine.

These considerations led the Court to suggest to plaintiff's counsel that he withdraw the complaint and file it in state court. Counsel requested and received three weeks to consider whether to accept dismissal or withdraw the complaint. Nevertheless, counsel chose to have the case proceed in federal court. Therefore, under the established and controlling law of New York, defendants' motion to dismiss the claim of abusive discharge is granted, with costs, but without attorneys' fees. Fed.R.Civ.Proc. 12(b)(6).

SO ORDERED.

---

**2.** The discussion in text should not be read to suggest that plaintiff has a claim of abusive discharge that would satisfy even a reformist state court. Defendants' motion for summary judgment is frivolous insofar as it is based on the claim that no genuine factual dispute exists. Plaintiff has offered the affidavit of Dr. Miles Galin to the effect that the defendant Dr. Michael Dunn told him that Dunn intended to get rid of plaintiff because of the newspaper story. Assuming, however, the truth of plaintiff's factual claims, she nevertheless asserts a weak case for a finding of abusive discharge in that (1) an investigation by state authorities failed to establish that defendants in fact engaged in the activity she alleges *i.e.* selling unqualified applicants positions in the medical

school; (2) plaintiff has failed to establish that the activity allegedly engaged in is either illegal or against any established public policy; and (3) plaintiff made very little if any effort to investigate the alleged activity and to secure change within the hospital, before going public with her suspicions. *Compare Chin v. American Telephone & Telegraph Co., supra; Fletcher v. Greiner,* 106 Misc.2d 564, 573, 435 N.Y. S.2d 1005, 1011 (1980). (Sup.Ct.Sp.T. Nassau Co. 1980). *See generally Protecting the Private Sector At Will Employee Who "Blows the Whistle": A Cause of Action Based upon Determinants of Public Policy,* 1977 Wisc.L.Rev. 777, 808 and cases cited n. 215 (discussing possible limits on cause of action).