**Maria N. KOVALESKY, Plaintiff,**

**v.**

**A.M.C. ASSOCIATED MERCHANDISING CORPORATION, Defendant.**

No. 82 Civ. 5802 (DNE).

United States District Court,
S.D. New York.

Nov. 24, 1982.

tious conduct, breach of contract and violation of statutes in the wage the defendant paid her while she was employed and in the defendant's action in discharging her. Jurisdiction arises under 28 U.S.C. §§ 1331 and 1343. The defendant has moved pursuant to F.R.Civ.P. 12(b)(5) and 12(b)(6) to dismiss the complaint for insufficiency of service of process and in the alternative to dismiss various aspects of the plaintiff's claim.

## FACTS

According to the plaintiff, the defendant, Associated Merchandising Corporation ("AMC"), employed the plaintiff, Maria Kovalesky ("Kovalesky"), from July 19, 1967 until September 18, 1981. Kovalesky purchased shoes for AMC to resell. Her salary at the time of discharge was $19,500 a year.

Kovalesky alleges that AMC underpaid her and did so for motives based on sex and national origin discrimination. Kovalesky asks for $250,000 in compensation.

Kovalesky further alleges that AMC discharged her for reasons based on her sex, age and national origin in violation of federal statutes, New York tort law and her contract with AMC. She alleges that she has been unable to obtain suitable employment and that because of these injuries she is entitled to $750,000 in damages.

AMC has moved to dismiss the complaint for insufficiency of service of process. In the alternative, AMC has moved to dismiss Kovalesky's claims under New York contract and tort law for failure to state a claim upon which relief can be granted. AMC has also moved to strike the amount of Kovalesky's claim for damages ensuing from her discharge that are not allowed under the federal statutes upon which she bases her claim.

Bernard Rolnick and Peter Dean, New York City, for plaintiff.

Weil, Gotshal & Manges, New York City, for defendant.

## MEMORANDUM OPINION

EDELSTEIN, District Judge:

The plaintiff in this case was an employee of the defendant. The defendant fired her, and she now claims damages for tor-

## MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE

F.R.Civ.P. 4(d) requires that service of a summons and complaint upon a corporation be done according to the method prescribed in Rule 4(d)(3), the method prescribed by a federal statute, or any accepta-

ble state method. The method of serving a corporation in New York State appears in CPLR 311. Pursuant to all these methods, a summons and complaint may be served only on specified people.

Affidavits submitted by AMC indicate that Kovalesky's process server did not serve any of the appropriate people with the summons and complaint, but instead threw the papers in AMC's lobby in front of a receptionist, who was not authorized by AMC to receive service. Kovalesky has made no effort to deny the allegations of AMC, but merely makes the conclusory statement that service was made pursuant to appropriate methods. The court finds, based on the parties' submissions, service was improper.

This "sewer service" constitutes shoddy practice. It delays the process of justice and must be discouraged. This court has discretion to do just that. *Haley v. Simmons,* 529 F.2d 78, 80 (8th Cir.1976); *Richardson v. Ingram Corp.,* 374 F.2d 502, 503 (3rd Cir.1967), *cert. denied* 389 U.S. 866, 88 S.Ct. 134, 19 L.Ed.2d 139 (1967), affirming dismissal where there was no showing that there was "a reasonable prospect" of effectively serving the defendant; *Gipson v. Township of Bass River,* 82 F.R.D. 122, 126 (D.N.J.1979) "court has broad discretion."

Specifically, the court may quash service and order the plaintiff to reserve, or it may dismiss the action. Courts dismiss when the plaintiff has little likelihood of effecting proper service. *Richardson, supra* at 503. In these cases, to keep the case alive when the plaintiff cannot hope to acquire jurisdiction over the defendant through proper service unnecessarily burdens the courts. On the other hand, when the plaintiff can make proper service quickly, courts generally quash the faulty service without prejudice to the plaintiff to reserve. *Alexander v. Unification Church,* 634 F.2d 673, 675 (2d Cir.1980) approving an order by

district court refusing to dismiss where plaintiff could reserve; *Grammenos v. C.M. Lemos,* 457 F.2d 1067, 1071 (2d Cir.1972) reversing the district court's dismissal because plaintiff could conceivably have effected service; *Apex Pool Equipment Corp. v. Venetian Pools, Inc.,* 52 F.R.D. 48, 50 (S.D.N.Y.1971) service of process "set aside" without prejudice to the plaintiff to reserve; *Davis v. Gahan,* 227 F.Supp. 867, 872 (S.D.N.Y.1964) quashing service, but denying motion to dismiss because it did "not appear that he [defendant] is not susceptible to proper service by compliance with the New York Statute. Cf. *Krulikowsky v. Metropolitan District Council,* 30 F.R.D. 24 (E.D.Pa.1962)." [1] This rule evolved because if the plaintiff can reserve effectively and will re-file the case when dismissed, then dismissal adds nothing to an order quashing service except burdening the courts with added paper work. In this case AMC is a corporation with offices in New York and can readily be served there. Therefore, plaintiff's service is hereby set aside, without prejudice to continue this suit at such time as the plaintiff serves AMC properly.

This case, however, is not one involving a mere technicality that the plaintiff ignored. Hence the plaintiff will pay the reasonable costs including attorney's fees, of the defendant's motion to dismiss for insufficiency of process. AMC will submit to the court a record of its costs in preparing the part of its motion relating to improper service.

## MOTION TO DISMISS TORT AND CONTRACT CLAIMS

AMC interprets Kovalesky's fifth cause of action as a claim for the tort of abusive discharge and for breach of contract, and it moves to dismiss these claims for legal insufficiency under New York law. Kovalesky does not allege that she had any writ-

---

1. Other circuits are in accord. *Stanga v. McCormick Shipping Corp.,* 268 F.2d 544, 554 (5th Cir.1959) affirmed "setting aside" service, but reversed the dismissal until there appeared to be "no reasonably conceivable means" of serving the defendant. *Lamont v. Haig,* 539 F.Supp. 552, 557 (D.S.D.1982) quashed service and gave the plaintiff sixty days to re-serve. *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521, 527 (D.N.J.1981). *Miree v. United States,* 490 F.Supp. 768, 776 (N.D.Ga.1980).

ten contract with AMC. AMC alleges, in its papers supporting dismissal of the fifth cause of action, that Kovalesky had no oral or written contract for employment. In her answering papers Kovalesky does not contest this allegation.

■ The New York common law of contracts is clear as to the status of an employee who works without a written or an oral contract for employment. The employer may terminate the employment relationship at will. *Parker v. Borock,* 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 (1959) stated the rule in *dicta,* and it has been cited in support of the rule myriad times by lower courts. *Edwards v. Citibank,* 74 A.D.2d 553, 425 N.Y.S.2d 327 (1st Dept.1980), *appeal dismissed,* 51 N.Y.2d 875, 433 N.Y.S.2d 1020, 414 N.E.2d 400 (1980). Plaintiff's fifth cause of action, to the extent it is based on a claim for breach of contract under New York law, is hereby dismissed.

New York tort law in the area of abusive discharge is not clear.[2] Kovalesky, however, does not need to rely on a *general* tort of abusive discharge to maintain her case, and so New York law on that subject does not reach the heart of the matter in the case at bar. The New York courts, at least implicitly, have recognized a tort for abusive discharge under the following special circumstances—(1) when the discharge is for reasons contrary to the public policy of the state, and perhaps (2) when the discharge is unconscionable or (3) when it is solely based on a malicious motive. Kovalesky has made sufficient allegations to bring herself within the protection of this body of the New York tort law.

Even the decisions that have emphasized that no general tort for abusive discharge exists have either assumed or implied that such a tort exists in one or more of the above-cited, special circumstances. Most recently, the court in *Murphy v. American*

*Home Products Corporation,* 88 A.D.2d 870, 451 N.Y.S.2d 770 (1st Dept.1982) denied the existence of the general tort, but added that the plaintiff had failed to show a violation of the penal law or public policy of the state. In *Pirre v. Printing Developments, Inc.,* 432 F.Supp. 840 (S.D.N.Y.1977), the court refused to recognize a general tort for wrongful discharge, but stated that a tort might arise if the discharge was "motivated solely by malice." *Pirre, supra,* at 841 n. 2 citing *Reale v. International Business Machines,* 34 A.D.2d 936, 311 N.Y.S.2d 767 (1st Dept.1970) *aff'd.* 28 N.Y.2d 912, 322 N.Y.S.2d 735, 271 N.E.2d 565 (1971).[3] Significantly, the *Pirre* court did not require that the reason for the discharge be against New York public policy, but only that it be motivated solely by malice.

New York courts have expressly recognized the tort in the other narrow area, where the discharge violates New York State public policy. In *Fletcher v. Greiner,* 106 Misc.2d 564, 435 N.Y.S.2d 1005 (1980) the supreme court dismissed a discharge suit because the plaintiff had not shown that the discharge was against a New York public policy. *Id.* 435 N.Y.S.2d at 1011. The appellate division affirmed a similar result in *Chin v. American Telephone and Telegraph Co.,* 96 Misc.2d 1070, 410 N.Y.S.2d 737 (Sup.Ct. New York Co. 1978), *aff'd.* 70 A.D.2d 791, 416 N.Y.S.2d 160, *appeal dismissed,* 48 N.Y.2d 603, 421 N.Y.S.2d 1028, 396 N.E.2d 207 (1979).

A string of federal court decisions has followed this line of cases. *Shaitelman v. Phoenix Mutual Life Ins. Co.,* 517 F.Supp. 21, 24 (S.D.N.Y.1980) suggests that a discharge to restrict an employee's political beliefs, activities or associations would be cognizable under the tort of abusive discharge because it would violate the public policy of New York State; *Savodnik v. Korvettes Inc.,* 488 F.Supp. 822, 824–6 (S.D.

---

**2.** For a comprehensive discussion of the question see *Boniuk v. New York Medical College,* 535 F.Supp. 1353 (S.D.N.Y. April, 1982).

**3.** In *Reale* the Appellate Division of the New York State Supreme Court explicitly recognized the narrow tort of abusive discharge by

holding that to maintain a claim in this area the plaintiff would have had to show "exclusive malicious motivation." The plaintiff failed at this requirement, and the court dismissed the case.

N.Y.1980) cites cases in thirteen jurisdictions recognizing a general tort of abusive discharge and cases in six others beginning to recognize such a tort and finds that the discharge in question might have violated the public policy protecting the integrity of pension plans; *Placos v. Cosmair, Inc.,* 517 F.Supp. 1287, 1289 (S.D.N.Y.1981) finds that a discharge based on age discrimination violated the public policy of the state and could be a cognizable tort, although the plaintiff had to replead his cause.

The old "at will" rule in its pure form, which bars any government intervention in a discharge situation not governed by a contract, is now too rigid.[4] *Savodnik, supra* at 824–5. *See also Boniuk, supra* at 1335–6 and the articles cited therein. To protect the public interest in the integrity of pension plans, in the preservation of free speech, and in the elimination of age, race and sex discrimination courts must hear cases where discharges are alleged to be in violation of an explicit government policy. Courts, however, must avoid second-guessing employers' business decisions that are made on an appropriate economic basis. As discussed above, this rule has been established by the New York courts and by those federal courts reviewing New York law.

■ This court follows this line of decisions in the New York and federal courts. AMC has moved to dismiss on the basis that there is *no* New York cause of action for tortious conduct in a discharge of an "at will" employee.[5] The court holds that this contention is without merit. Defendant's motion to dismiss plaintiff's cause of action in tort for an abusive discharge is denied.[6]

---

**4.** The old "at will" rule, which allows an employer to discharge, at will and for no reason whatsoever, any employee who does not have an employment contract, arose in an era during which a mistaken notion that a government policy of complete laissez faire toward business relationships would produce an optimal economic outcome prevailed upon the thinking of the legislators who designed our laws. This era and its ideas preceded the realization that a pure hands off policy not only permits unfairness but also allows economic inefficiencies to plague the system. Furthermore, in recent years social scientists and psychologists have revealed that employment is linked not only to livelihood but also to mental and physical health, and family stability. Hence the old deference to employers' absolute discretion to fire is no longer justified.

In addition, the "at will" era also preceded the assumption by the government of the responsibility for protecting significant public interests that arise in the context of the work place. For example, the 19th century "at will" rule, emerged before the first significant First Amendment cases in the early part of this century. Similarly the government interest in the integrity of private pensions (because they eliminate the need for public support of the recipients) has emerged only after the establishment of a right to some form of public support, which occurred after the fixing of the "at will" rule. Today the government is required by law to protect these important interests.

**5.** The defendants do not challenge the sufficiency of the plaintiff's factual allegations in attacking the tort claim. To do so, furthermore, would require more than a conclusory statement challenging the sufficiency of the plaintiff's factual allegations.

As a matter of law, a plaintiff must allege: (1) a specific public policy clearly expressed in New York's laws, executive orders, regulations or constitution, and (2) a discharge in violation of that public policy. *Chin v. American Telephone & Telegraph, supra,* 96 Misc.2d at 1075; 410 N.Y.S.2d at 740. *Sherman v. St. Barnabas Hospital,* 535 F.Supp. 564 (S.D.N.Y.1982).

Kovalesky alleged age, sex and national origin discrimination, all three have been found to be violations of the public policy of New York State. She has made sufficient allegations to survive a motion to dismiss as a matter of law. She has alleged that she performed her work well, that she was discharged without any stated reason, and that she was replaced by a younger male.

If AMC challenged the sufficiency of the factual allegations, it would need to do so specifically, making specific counter allegations. At that point Kovalesky would need to respond specifically to avoid dismissal. Here the plaintiff has pleaded a case, and neither side has dealt specifically with the underlying facts. *Reale, supra* 311 N.Y.S.2d at 768.

**6.** In permitting the tort claim, though denying the contract claim, the court will not allow the plaintiff to bootstrap a contract claim on the tort claim. In abusive discharge cases plaintiffs have sometimes tried to make out a case that good faith in contracts is a New York State public policy, that a bad faith discharge is therefore against public policy, and that such a discharge makes out a case of tortious conduct. Allowing such an argument would shift the court's investigation from one of determining a

## MOTION TO STRIKE CLAIM FOR DAMAGES

Kovalesky claims damages for sex, national origin and age discrimination in her second, third and fourth causes of action. Defendant argues that under the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.,* which provides a cause of action for discrimination at work, plaintiff can claim only wages and other fringe benefits lost due to the discriminatory conduct. The defendant also argues that the plaintiff's claim for damages under the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.* ("ADEA"), is the same as that under the Civil Rights Act. Defendant moves that any claim under these statutes for damages greater than these amounts be dismissed.

▉ Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(g) lists the damages available for unlawful employment practices, and it does not include compensation for emotional distress, injury to reputation or other similar injuries. The section has been widely interpreted to exclude these sorts of claims. *See Shah v. Mt. Zion Hospital and Medical Center,* 642 F.2d 268, 272 (9th Cir. 1981). To the extent that Kovalesky's claim in her second, third and fourth causes of action are based on 42 U.S.C. 2000e *et seq.,* her claims for any monetary damages other than for lost wages and lost fringe benefits are dismissed.

▉ The ADEA allows lost wages and fringe benefits plus an equal amount in punitive damages for a wilfull violation. *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 686–688 (7th Cir.1982). Plaintiff's claims for damages greater than lost wages, lost fringe benefits plus an equal amount in liquidated damages, to the extent that they are based on the ADEA, are hereby dismissed.

SO ORDERED.

violation of public policy to one of determining the good faith of an employer's decision. The court will not proceed down such a road that would in effect circumvent the "at will" rule. *See Boniuk, supra* at 1336–8 regarding the reluctance of federal courts to change state law. Thus the burden remains on the plaintiff to

show not simply bad faith but to show that the discharge: (1) violates a specific, express public policy; (2) was unconscionable; or (3) was motivated by solely malicious reasons. Any change from this state of the rule must be made by New York courts. *Boniuk, supra.*